Lawrence SHACKELFORD,
Petitioner–Appellant,

v.

Jack SHIRLEY, Sheriff, Lee County, Mississippi, et al., Respondents–Appellees.

No. 90–1528.

United States Court of Appeals,
Fifth Circuit.

Dec. 13, 1991.

Jim Waide, Tupelo, Miss., for petitioner-appellant.

Marvin L. White, Jr., Asst. Atty. Gen., Mike Moore, Atty. Gen., Jackson, Miss., for respondents-appellees.

Before JOHNSON, KING, and EMILIO M. GARZA, Circuit Judges.

KING, Circuit Judge:

This habeas corpus appeal involves an unusual first amendment challenge to the constitutionality of the appellant's incarceration. Lawrence Shackelford was convicted in state court of violating Miss.Code Ann. § 97–29–45, the Mississippi telephone harassment statute, which provides in pertinent part:

(1) It shall be unlawful for any person or persons:

(b) to make a telephone call, with intent to terrify, intimidate, or harass, and threaten to inflict injury or physical harm to any person at the called number or to his property.

Shackelford admitted to placing a telephone call to Otha Richardson, his former supervisor, and stating that the next time Richardson came by Shackelford's car lot he would be "toting an ass whipping." The parties to the conversation gave differing versions of the events leading up to the call, but these differences are not relevant to the issue presented in this appeal. Shackelford objected to the trial judge's proposed instruction on the elements of the crime, contending that constitutional limitations on the state's power to punish speech prevented conviction unless the jury found that the words led to an immediate danger of harm. His proposed instruction would have prevented the jury from convicting for the mere use of words "unless there was some great, clear and present danger of some injury" accompanying the words. The judge refused his instruction, telling the jury "you don't have to prove [the defendant has] the power and it is imminent." The jury found Shackelford guilty of the offense. Shackelford was given a two year suspended sentence, two years of probation, and fined. The Mississippi Supreme Court affirmed the conviction without opinion. *Shackelford v. State*, 520 So.2d 1363 (Miss.1988).

Shackelford then filed a petition for habeas corpus in the district court[1] raising the same first amendment claim he made in state court. He contended that the jury instructions were erroneous because the jury could not, consistent with the first amendment, convict unless they found that the words were likely to incite immediate harm. A magistrate issued a report and recommendation that the petition be denied, which the district court adopted. We affirm.

▮▮ Shackelford argues that "pure speech cannot be made criminal, absent a showing of some imminent danger or a threat of some imminent breach of the peace," and that absent the instruction the conviction does not comport with first amendment limitations on a state's ability to punish speech. Shackelford is correct that, under some circumstances, the first amendment permits speech to be punished only if the words themselves are "directed to inciting or producing imminent lawless action and [are] likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S.Ct. 1827, 1829, 23 L.Ed.2d 430 (1969) (per curiam); *see also Houston v. Hill*, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). But Shackelford interprets the "clear and present danger" test as refined by *Brandenburg* and *Hill* much too broadly. These cases do not state a general principle applicable to every imaginable utterance or form of expression, but rather effectuate the first amendment's general guarantee of governmental noninvolvement in speech implicating a broadly conceived notion of political and social discourse. The nature of the speech involved in these cases is an indication of the robust nature of public discourse the Court deems worthy of protection: *Brandenburg* involved a Ku Klux Klan rally in which a participant advocated the use of force to upset the existing political order, *id.* at 446–47, 89 S.Ct. at 1829, while *Hill* involved an angry citizen castigating a police officer in the course of his duties. 482 U.S. at 453–54, 107 S.Ct. at 2205; *see also Cohen v. California*, 403 U.S. 15, 22–23, 91

---

1. Although there is no indication in the record that Shackelford pursued any avenues of state collateral relief, the state in its answer to the petition for habeas corpus conceded that Shackelford had exhausted all state remedies and that "further return to the state court on these issues would be futile."

S.Ct. 1780, 1786–87, 29 L.Ed.2d 284 (1971) (reversing conviction under breach of peace statute for wearing jacket bearing vulgar epithet in a courthouse, rejecting proposition that states "may properly remove [an] offensive word from the public vocabulary").

■■■ As speech strays further from the values of persuasion, dialogue and free exchange of ideas the first amendment was designed to protect, and moves toward threats made with specific intent to perform illegal acts, the state has greater latitude to enact statutes that effectively neutralize verbal expression. *Watts v. United States,* 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969) (per curiam) (holding facially constitutional federal statute prohibiting making threats to take the life or inflict bodily harm on the President of the United States); *United States v. Howell,* 719 F.2d 1258, 1260 (5th Cir.1983) (per curiam), *cert. denied,* 467 U.S. 1228, 104 S.Ct. 2683, 81 L.Ed.2d 878 (1984) (distinguishing between "advocacy" protected by *Brandenburg* test and unprotected threats). Professor Tribe describes the "public dialogue" values underlying the first amendment as follows:

> The notion that some expression may be regulated consistent with the first amendment ... starts with the already familiar proposition that expression has special value only in the context of "dialogue": communication in which the participants seek to persuade, or are persuaded; communication which is about changing or maintaining beliefs, or taking or refusing to take action on the basis of one's beliefs ... It is not plausible to uphold the right to use words as projectiles where no exchange of views is involved.

L. Tribe, *American Constitutional Law,* § 12–8 at 836–37 (2d ed. 1988). The theory that the first amendment permits regulation of speech which does not in any sense contribute to the values the first amendment was designed to advance stems from the Court's well-known identification in *Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), of speech which is "no essential part of any exposition of ideas," and which, by its "very utterance inflicts injury or tends to incite an immediate breach of the peace." *Id.* at 571–72, 62 S.Ct. at 769. In our view, as expansive as the first amendment's conception of social and political discourse may be, threats made with specific intent to injure and focused on a particular individual easily fall into that category of speech deserving of no first amendment protection.

■■ Our view of the level of scrutiny due Shackelford's threat receives support from the Supreme Court's treatment of the threat in *Watts.* In that case, a young man who had just participated in an antiwar rally in Washington, D.C. joined a discussion on police brutality, where he was overheard saying, "[i]f they ever make me carry a rifle the first man I want to get in my sights is L.B.J." *Id.* 394 U.S. at 706, 89 S.Ct. at 1401. The Court initially noted that government's "overwhelming" interest in protecting the safety and freedom of movement of the President rendered the statute prohibiting threats against the President, 18 U.S.C. § 871, facially constitutional. However, because the statute punished a form of pure speech, this interest could not automatically support a conviction under the statute; rather, interpretation of the statute necessarily was subject to the countervailing weight of our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open ...." *Id.* at 707, 89 S.Ct. at 1401 (citing *New York Times Co. v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 720–21, 11 L.Ed.2d 686 (1964)). The Court indicated that it would distinguish between punishable threats and constitutionally protected speech by narrowing its focus to the context of the speech. Finding that the petitioner's threat, taken in context, was not the "true 'threat'" required for conviction, but was merely "political hyperbole" and a "very crude offensive method of stating a political opposition to the President," the court reversed the conviction. *Id.* 394 U.S. at 708, 89 S.Ct. at 1401–02. This focus on context was critical, for it indicates that

speech consisting of a threat to kill or injure is proscribable consistent with the first amendment so long as the jury determines that the threat falls outside the realm of the public dialogue.

In *United States v. Kelner*, 534 F.2d 1020 (2d Cir.), *cert. denied*, 429 U.S. 1022, 97 S.Ct. 639, 50 L.Ed.2d 623 (1976), the court distinguished *Watts* in the course of upholding the conviction of a man who threatened to kill Yasser Arafat during Arafat's 1974 trip to New York.[2] The court focused on the appellant's statement, made on a New York television station on the day of Arafat's visit, that "[w]e have people who have been trained and who are out now and who intend to make sure that Arafat and his lieutenants do not leave this country alive ... [w]e are planning to assassinate Mr. Arafat ... [e]verything is planned in detail." *Kelner*, 534 F.2d at 1025. Unlike the statement in *Watts*, "it [could] not be said as a matter of law that appellant was stating only ideas." *Id.* The trial judge had instructed the jury, in accord with the distinction made in *Watts*, that they were to distinguish between an extreme form of political hyperbole or expression of opinion and a genuine threat to kill. The guilty verdict, therefore, reflected the jury's view that there was a genuine threat to kill—the kind of statement which, under *Watts*, may be punished consistent with the Constitution. Similarly, this court in *Howell*, in upholding against constitutional attack a conviction under the Presidential threat statute, refused to overturn the jury's finding that the statements of a patient in a state hospital constituted true threats to take the life of the President. Because the jury finding indicated that the appellant "was merely stating his own unambiguous and apparently quite serious intention to take the life of the President," the first amendment presented no barrier to conviction.

We do not face the difficulty encountered in *Watts* and *Kelner* of a somewhat ambiguous intent requirement in the statute. *Kelner* solved this difficulty by equating

the *Watts* requirement of a "true threat" with "a requirement of proof of specific intent to execute the threat," because a specific intent requirement ensures that only those threats "which are so unambiguous and have such immediacy that they convincingly *express* an *intention* of being carried out" are punished. *Kelner*, 534 F.2d at 1027 (emphasis in original). This immediacy, or clarity of purpose, the court found, was the key to distinguishing true threats. The Mississippi statute, however, contains an explicit intent requirement. In *United States v. Velasquez*, 772 F.2d 1348 (7th Cir.1985), *cert. denied*, 475 U.S. 1021, 106 S.Ct. 1211, 89 L.Ed.2d 323 (1986), the court, in examining the first amendment implications of the federal statute criminalizing threats to retaliate against government informants, 18 U.S.C. § 1513(a)(2), held that the required "intent to retaliate" limits the kind of threats that may be punished and eliminates the possibility that threats containing ideas or advocacy would be punished. *Id.* at 1357. Likewise, the court in *United States v. Lampley*, 573 F.2d 783 (3d Cir.1978), in upholding the federal telephone harassment statute, 47 U.S.C. § 223, against constitutional attack, noted that the statute's "narrow intent requirement precludes the proscription of mere communication." *Id.* at 787; *see also Gormley v. Director, Connecticut State Dep't of Probation*, 632 F.2d 938, 943 (2d Cir.), *cert. denied*, 449 U.S. 1023, 101 S.Ct. 591, 66 L.Ed.2d 485 (1980) (rejecting first amendment challenge to Connecticut telephone harassment statute in habeas corpus appeal); *State v. Thompson*, 701 P.2d 694, 697–98 (Kan.1985) (intent requirement narrows reach of telephone harassment statute to unprotected speech).

■ The Mississippi courts have not interpreted the reach of § 97–29–45, except to say that the words "I want you," standing alone, do not constitute threatening language. *Sanders v. State*, 306 So.2d 636, 636 (Miss.1975). Nevertheless, we are confident that the statutory language

---

**2.** The prosecution proceeded under 18 U.S.C. § 875(c), which prohibits the "transmi[ssion] in interstate commerce of any communication containing ... any threat to injure the person of another ...."

clearly prescribes for punishment only a class of "true threats," and not social or political advocacy. Because the trial judge's instructions in this case tracked the language of the statute,[3] the jury's verdict represents a finding that Shackelford engaged in unprotected, threatening speech.

■■■ Although it is unclear from his petition whether Shackelford also contends that the Mississippi telephone harassment statute is unconstitutionally overbroad, he adverts to the possibility that the statute is "facially unconstitutional." We therefore consider—and reject—the possibility that the statute is overbroad. A statute that legitimately punishes some speech but which might be construed to inhibit a substantial amount of protected speech may be unconstitutionally overbroad. *New York v. Ferber*, 458 U.S. 747, 768–69, 102 S.Ct. 3348, 3360–61, 73 L.Ed.2d 1113 (1982). Although the statute as applied to the particular defendant raising the challenge may comport with constitutional limitations on a state's power to prohibit expressive activity, the danger that broad readings could result in unconstitutional applications may be enough to render the entire statute infirm. This sort of challenge, which implicates hypothetical applications of a statute to the speech of third persons not before the court, constitutes an exception to traditional rules of standing, *New York State Club Ass'n v. City of New York*, 487 U.S. 1, 11, 108 S.Ct. 2225, 2233, 101 L.Ed.2d 1 (1988), but this exception is justified by the recognition that the interests the first amendment is designed to protect "may be inhibited almost as easily by the potential or threatened use of power as by the actual exercise of that power." *Id.* (citing *Thornhill v. Alabama*, 310 U.S. 88, 97–98, 60 S.Ct. 736, 741–42, 84 L.Ed. 1093 (1940)); *see also Ferber*, 458 U.S. at 768, 102 S.Ct. at 3360–61 (describing deterrent effect on protected speech of overly broad statutes);

*Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 634, 100 S.Ct. 826, 834–35, 63 L.Ed.2d 73 (1980) (same).

■■■ The Court has made clear that facial challenges of this sort can succeed only if there is a significant imbalance between the protected speech the statute should not punish and the unprotected speech it legitimately reaches: "[O]verbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 2917–18, 37 L.Ed.2d 830 (1973).[4] The defendant must demonstrate "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the [c]ourt" before a statute will be struck down as facially overbroad. *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801, 104 S.Ct. 2118, 2126–27, 80 L.Ed.2d 772 (1984). The fact that a court can hypothesize some deterrent effect on protected speech is insufficient for overbreadth purposes. For example, in *Ferber*, the Court recognized that a statute criminalizing the distribution of non-obscene child pornography could be construed to criminalize the distribution of medical textbooks and National Geographic pictorials. However, the Court "seriously doubt[ed]", and the parties did not suggest, that the "arguably impermissible applications of the statute amount[ed] to more than a tiny fraction of the materials within the statute's reach." *Id.* at 773, 102 S.Ct. at 3363. The Court refused to find overbreadth under these circumstances.

Shackelford has not suggested that a broad range of protected speech might impermissibly fall within the ambit of the Mississippi statute. One certainly could conjure up prosecutions for telephone

---

**3.** The judge instructed the jury that they should convict only if they found that Shackelford "ma[d]e a telephone call to Otha Richardson with the intent to terrify, intimidate or harass, and threaten[ed] to inflict injury and physical harm to the said Otha Richardson ..."

**4.** Although *Broadrick* involved expressive conduct, rather than pure speech, the Court in *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) indicated that the *Broadrick* rationale for limiting overbreadth challenges applies to pure speech as well. *Id.* 458 U.S. at 771–72, 102 S.Ct. at 3362–63.

threats made with intent to harass to, for example, a department store complaint department, but we have difficulty believing that the question whether there truly was a threat in those circumstances could go to the jury. The kind of harassing, abusive and threatening language uttered over the telephone that numerous states and Congress have found worthy of proscription seems clear enough that hypothetical unconstitutional applications of the Mississippi statute cause us little concern.[5]

Shackelford was prosecuted under a statute which is facially constitutional, and his conviction for uttering a threat does not offend the first amendment. Therefore, the district court's denial of habeas corpus relief is AFFIRMED.

---

**5.** Shackelford was prosecuted under a statute which is facially constitutional, and his conviction for uttering a threat does not offend the first amendment. We recognize, of course, that this statute might be applied in an unconstitutional manner, and nothing in our ruling today forecloses a constitutional challenge to a prosecution for speech which is constitutionally protected. We hold only that the statute is not overbroad and therefore is constitutional on its face.