673 So.2d 704 (1996)
Annette LASSALLE
v.
William Hawk DANIELS.
No. 96 CA 0176.
Court of Appeal of Louisiana, First Circuit.
May 10, 1996.
*706 Linda Ritzie, Baton Rouge, for Defendant-Appellant.
Christine Lipsey, Baton Rouge, for Plaintiff-Appellee.
Before WATKINS, J., and CRAIN and TANNER, JJ., Pro Tem.[1]
THOMAS W. TANNER, Judge Pro Tem.
William Hawk Daniels appeals a judgment granting petitioner, Judge Annette Lassalle, a preliminary injunction prohibiting Daniels from harassing Lassalle in any manner whatsoever, and from various other particulars detailed below. Mr. Daniels argues that the injunction was wrongfully issued because the prerequisites for that relief had not been satisfied, i.e., a showing that the mover would suffer irreparable injury, loss or damage if the injunction were not issued, and that there is no other available remedy at law. Daniels further contends the injunction is invalid because the statutory bond had not been posted. Although not specifically assigned as error, Daniels argues that the injunction wrongfully infringes on his constitutional rights, particularly, his first amendment right to free speech. We find that the injunction was properly granted; however, it impermissibly prohibits defendant from going to a public place. To the extent that defendant cannot be restrained from the ninth floor of the governmental building, the injunction is amended; otherwise, it is affirmed.
Although Daniels admits his involvement in the actions complained of, he denies that any of those actions were threatening or harassing toward Lassalle. The actions of Daniels, upon which the request for injunction were based, are revealed in the record as follows:
(1) On August 31, 1992, the Baton Rouge Police received calls from two different persons reporting a suspicious man had been standing in front of Lassalle's home, and the same man had been seen riding his motorcycle up and down the road in front of Lassalle's home. When Sgt. Jackson of the East Baton Rouge Police department arrived at Lassalle's home, the man, who was identified by Lassalle as Daniels, had left the premises, and a note he had handwritten to Lassalle was found tucked into the front door of the home. Lassalle reported to the police that this was one of many notes that had been left by Daniels in her mailbox or on her door. She also reported that Daniels had been repeatedly passing in front of her home, despite her requests that he leave her alone. (As a result of this incident, Daniels was subsequently apprehended and arrested for stalking.)
(2) Kelly Flanagan, an employee of the District Attorney's office, testified that she received four or five calls at the D.A.'s office from Mr. Daniels during early 1995, demanding access to his criminal files. Ms. Flanagan testified that Daniels was agitated and belligerent, and "downright nasty and rude." She stated that he used profanity when referring to Lassalle as the root of all his problems, and he also stated that "[Lassalle] would be sorry."
(3) Sheila Dykes, an employee with the criminal division of the Clerk of Court's office, *707 testified that in early 1995, Mr. Daniels appeared at the front counter in the clerk's office requesting to see his criminal file. She testified that while she was attempting to help him, he became belligerent, started cursing and using bad language. He mentioned Judge Lassalle and stated that he was "going to kick ass." Afraid that he was becoming violent, Dykes called her administrator and asked for security to escort Mr. Daniels away. Regarding this incident, Charles Ard, with the E.B.R. Sheriff's office, testified that he was called to escort Mr. Daniels away from the clerk's office. Ard testified that Daniels said that Judge Lassalle was a "f___ joke."
(4) On May 15, 1995, Officer Fontenot, the Baton Rouge City Police officer assigned to the governmental building, noticed a group of people gathering and talking in front of the building. As he approached the gathering, Officer Fontenot noticed a man, later identified as Daniels, standing in front of the building holding a handmade sign which read as follows:
 A M. LASSALLE JUDGE
 FALSE Accuser Stalking
 Cocaine Abuser
 Merchant of Chaos
 Unmitigated Lying
 Cocaine Whore! ...
Officer Fontenot testified that he had been assigned, earlier, to watch the B-2 level of the parking garage at the governmental building because Daniels allegedly had been stalking and harassing Judge Lassalle. Fontenot recognized the man carrying the sign as Daniels, and escorted him inside the building so Fontenot could check on the existence of a restraining order. Finding none, Fontenot asked Daniels, who was being very uncooperative, to leave the building. As he was leaving, Daniels stated, "that cocaine whore is going to get it yet."
Charlie Ard, the bailiff for Judge Lassalle's courtroom, testified that he had been assigned to escort Judge Lassalle from her car in the garage to her office, as a result of a prior incident during which Daniels allegedly verbally accosted the judge as she exited her car to go to work. Mr. Ard also testified that as he was escorting Daniels out of the building, he heard Daniels remark that "that cocaine whore is going to get it yet."
(5) Later that same afternoon, Julie Ray and Judy Connally, employees at the family court, each answered phone calls made to the family court by Daniels. Ms. Ray, the docket clerk for Judge Graphia, testified that Daniels was inquiring if a restraining order had been filed against him, and asserting that a restraining order was "not going to stop [him]." According to Ray, Daniels stated that the "cockamamie woman judge" had caused him nothing but trouble, and that he would be back tomorrow. Ms. Connally also testified that she answered calls from Daniels on the afternoon of 5/15/95, during which Daniels was demanding and rude, but she hung up the phone on him when he began calling Judge Lassalle a "slut."
Based on the accumulation of the above detailed events, on the afternoon of May 15, 1995, Judge Lassalle filed this action for an injunction. According to Lassalle, she filed the petition because it was becoming increasingly apparent to her that Daniels "intends me serious bodily harm." She testified that over a period of seven years, Daniels, whom she knew socially, began making harassing phone calls to her home. When she got an unlisted telephone number, Daniels began passing in front of her home and leaving notes in her mailbox and on her door. She testified that the incident in the parking garage of the governmental building, during which she was verbally accosted and threatened by Daniels, left her very disturbed and frightened of him.
The trial court found that the prerequisites for an injunction had been shown to exist, stating in part:
The court is satisfied that the temporary restraining order enjoining, restraining and prohibiting the defendant from harassing Judge Lassalle in any manner, from going near her residence, from interfering with her employment, and the court would enjoin him from even going onto the ninth floor of this building, either of the parking lots in this building. In further recognizing that he has a right of free speech, the *708 court feels that the accusations in his sign of cocaine abuser, cocaine whore, and those types of statements are beyond the scope of the type of things that Judge Lassalle ought to have to put up with, and he is prohibited from using those type comments or those type of words.
The judgment rendered prohibits Daniels from harassing Lassalle in any manner whatsoever; going near her residence; interfering in any manner with her employment; harassing her staff; going on the ninth floor and the parking garage of the governmental building; and suggesting that Lassalle has engaged in criminal conduct and from using profane language to describe Lassalle individually. The judgment also provides that if Daniels should require access to the ninth floor or the parking garage of the governmental building, he must first secure permission from the trial court judge.
A showing that irreparable injury, loss or damage may otherwise result to the applicant must be shown before an injunction may be issued. La.C.C.P. art. 3601. The question of whether the preliminary injunction should be granted or denied is addressed to the sound discretion of the trial court (trier of fact) and the trial court's decision will be disturbed on review only in cases where a clear abuse of its discretion has been shown. Anzelmo v. Louisiana Commission on Ethics for Public Employees, 435 So.2d 1082, 1087 (La.App. 1st Cir.), writ denied, 441 So.2d 1220 (La.1983).
Daniels argues the trial court abused its discretion in granting the injunction although Lassalle failed in her burden of proving irreparable injury. First, Daniels asserts that Lassalle's allegations that he "engaged in a pattern of willful, malicious, and harassing conduct directed at [her]" was unsupported by the record. Further, Daniels asserts, Lassalle had an available adequate remedy at law for redress of the alleged torts. Further, according to Daniels, he was merely exercising his constitutional right of free speech by publicly expressing his opinion of Lassalle, and contends that the injunction is an impermissible curtailment of this fundamental right.

First Amendment
As a general rule, the first amendment provides that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content. DeSalvo v. State of Louisiana, 624 So.2d 897, 899 (La.1993); cert. denied, ___ U.S. ___, 114 S.Ct. 1067, 127 L.Ed.2d 386 (1994). Nevertheless, the rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place or at any time. State v. Encalade, 505 So.2d 87 (La.App. 4th Cir.); writ denied, 508 So.2d 63 (1987), citing, Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965).
As speech strays further from the values of persuasion, dialogue and free exchange of ideas the first amendment was designed to protect, and moves toward threats made with specific intent to perform illegal acts, the state has greater latitude to effectively neutralize verbal expression. Shackelford v. Shirley, 948 F.2d 935, 938 (5th Cir.1991), (emphasis added). Furthermore, as explained by Professor Tribe:
The notion that some expression may be regulated consistent with the first amendment... starts with the already familiar proposition that expression has special value only in the context of "dialogue": communication in which the participants seek to persuade, or are persuaded; communication which is about changing or maintaining beliefs, or taking or refusing to take action on the basis of one's beliefs ... It is not plausible to uphold the right to use words as projectiles where no exchange of views is involved.
L. Tribe, American Constitutional Law, § 12-8 at 836-37 (2d Ed.1988) (emphasis added).
In Shackelford v. Shirley, supra, 948 F.2d 935, the fifth circuit was faced with defendant's argument that his conviction for violating Mississippi's telephone harassment statute constituted an impermissible curtailment of his first amendment rights. In that matter, the defendant admitted he called his former supervisor and told him the next time *709 he came by the defendant's car lot he would be "toting an ass whipping." The court rejected the defendant's claim, holding:
In our view, as expansive as the first amendment's conception of social and political discourse may be, threats made with specific intent to injure and focused on a particular individual easily fall into that category of speech deserving of no first amendment protection.

Shackelford, supra, 948 F.2d at 938, (emphasis added). We agree with the court's conclusion and find it applicable to the matter before us.
Daniels contends that the public expression of merely his personal opinion of Judge Lassalle is protected speech. We do not deny that a person has the right of freedom of expression, and we are aware of the jurisprudence supporting this right. See, e.g., Greenberg v. De Salvo, 254 La. 1019, 229 So.2d 83 (1969), cert. denied, sub nom. Greenberg v. Dunker, 397 U.S. 1075, 90 S.Ct. 1521, 25 L.Ed.2d 809 (1970); Hairford v. Perkins, 520 So.2d 1053 (La.App. 3rd Cir. 1987); Galle v. Coile, 556 So.2d 957 (La.App. 3rd Cir.1990). However, as did the defendant's threat in Shackelford, Daniels "mere" expression of his opinion of Judge Lassalle went far beyond the realm of protected speech.
Daniels' expression of opinion of Judge Lassalle was not simply an affront to her dignity and integrity, which, albeit poor taste, is protected speech. Daniels' "speech" included words of anger and profanity and included threats of varying degrees, i.e., she "is going to get it yet"; she "will be sorry"; that he would "be back tomorrow" and assertions to the effect that a restraining order was not going to stop him and that he was not afraid of the law or of going to jail. Judge Lassalle testified that she was extremely disturbed by and frightened of the defendant, and that his persistent actions despite her repeated requests that he leave her alone left her in fear that he would inflict great bodily harm to her. Further, the record contains testimony of several witnesses who witnessed Daniels' behavior, and were frightened of him and considered him to be potentially violent. Indeed, Ms. Dykes saw fit to call in extra security to the clerk's office when Daniels became belligerent and uncooperative. Some witnesses found Daniels' actions and language so offensive as to warrant hanging up on him, even though the calls were received by them at their place of employment. Given these actions, and the circumstances surrounding them, we find that Daniels' speech was delivered with the specific intent to injure and was focused and directed on one particular individual; a type of speech which is not constitutionally protected.

Preliminary Injunction
Daniels also argues that the trial court abused its discretion in granting the injunction without a showing of irreparable injury, loss or damage. He contends that Lassalle's allegations of harassment and threats, even if proven to be true, constitute torts, the redress for which there exists an adequate remedy at law.
Courts are generally reluctant to issue an injunction to restrain torts such as defamation or harassment. Greenberg v. De Salvo, supra, 229 So.2d at 86. An injunction is a harsh, drastic and extraordinary remedy and is only issued where the petitioner is threatened with irreparable loss or injury without adequate remedy at law. Irreparable injury is that which can not be adequately compensated in damages, or for which damages can not be compensable in money. Greenberg v. De Salvo, supra, 229 So.2d at 86.
As stated above, if Daniels' expression of opinion of Judge Lassalle had been merely unfavorable, however distasteful, negative or injurious to her reputation and integrity, we would be constrained by law to reverse the injunction, because there would be an adequate remedy at law, i.e., a civil action in tort for damages. Indeed, even if Daniels' words were defamatory, an injunction would not be a proper remedy. However, this matter is far more serious than the expression of allegedly defamatory and insulting speech. As detailed above, there were some very real and imminent threats made toward the person of Lassalle, in the presence of people *710 who were also disturbed and frightened by those threats. We find that petitioner's fear of bodily harm and continued threats are justified based on the evidence in the record, and constitute a showing of irreparable injury. Therefore, the trial court did not abuse its discretion in granting the preliminary injunction.
In granting the injunction, the trial court was mindful and cautious about a potential infringement on defendant's constitutional rights, given that the governmental building where Judge Lassalle is employed is a public building, and the sidewalk in front thereof, is likewise, a public area. Accordingly, the trial court tailored the injunction to prohibit defendant only from the ninth floor of the building, the floor on which Judge Lassalle's office and staff are located. The ninth floor is a public area and we find the injunction impermissibly enjoins Daniels from going on the ninth floor. To that extent, the injunction is amended; however, the enjoinment of threats and harassment in any manner whatsoever toward Lassalle remains in effect in all places, including the ninth floor of the governmental building.
We do find some merit to Daniels' argument that the injunction should not have issued without the furnishing of security, as required by La.C.C.P. 3610. When an injunction has been granted without security, an appellate court may either set aside the preliminary injunction or remand the matter to the trial court for the fixing of security. Hernandez v. Star Master Shipping Corp., 94-1553 (La.App. 1st Cir. 4/7/95), 653 So.2d 1318. We do not believe it would serve any useful purpose in this matter to set aside the injunction due to the lack of security. The interests of justice and judicial economy would be best served by remanding this matter to the trial court for the furnishing of security.
For all of the above reasons, the preliminary injunction is amended to allow defendant access to the ninth floor of the governmental building, as long as such access does not violate the prohibition against threats and harassment; in all other respects, the injunction is affirmed. This matter is hereby remanded to the trial court, which is ordered to fix the amount of security to be furnished by petitioner. Costs of this appeal are assessed to defendant.
AMENDED; AFFIRMED AS AMENDED. REMANDED WITH ORDER.
NOTES
[1] Judges Hillary J. Crain and Thomas W. Tanner, retired, are serving as judges pro tempore by special appointment of the Louisiana Supreme Court.