| .DOWNING, J.
This appeal involves a lawsuit wherein Richard and Dree Seal claim Richard and Annette Dunham violated a Washington Parish subdivision’s building restrictions when they constructed an accessory workshop budding on their property. The trial court granted a mandatory injunction ordering the Dunhams to remove the workshop building from their property. The Dunhams appealed. For the following reasons, we affirm the grant of a mandatory injunction in this matter but vacate the portion of the judgment requiring the removal of the metal workshop. We remand with instructions for further proceedings.
GROUNDS FOR INJUNCTION
Louisiana Civil Code art. 779 provides that building restrictions may be enforced by injunction without regard to the general limitations on injunctions set forth in La. C.C.P. art. 3601. In granting a mandatory injunction ordering the Dunhams to remove their accessory building, the trial court found violations of three provisions of the controlling “Zoning and Building Restrictions.” We discuss these in turn.
1. Residential Use.
Restriction 5 provides that each lot, including improvements, “shall be used only for single family residential purposes.” The record before us contains no evidence that the Dunhams used the workshop building at issue for any commercial or agricultural purpose. Mr. Dunham’s stated purpose in building the building was to house a workshop so that he could restore an MG Midget and “piddle and do some work.” Nothing in the record contradicts these purposes, and even though the workshop building was |3rather large at 1200 square feet,[1] we conclude that such *377 activity is consistent with normal residential purposes.
The restrictions contain no definition of “residential purposes,” but in Concord Estates Homeowners Assoc. Inc. v. Special Children’s Foundation Inc., 459 So.2d 1242, 1244 (La.App. 1 Cir.1984), this court defined “residential purposes” as follows: “Giving the word its plain and ordinary meaning, we may confidently say that a building used for residential purposes is one in which people reside or dwell, or in which they make their homes, as distinguished from buildings in which people conduct business or commerce.”[2] (Emphasis added.) Here, there is no evidence in the record from which the trial court could conclude that the workshop was being used to conduct any business or commerce. And we note, without need for citation, that tending to one’s hobbies and “piddling” and “do[ing] some work” in a home workshop are part of making one’s home and are normal, expected, traditional residential activities.
This holding is consistent with the general nationwide understanding of the term, “residential purposes.” 20 Am.Jur.2d Covenants, Conditions and Restrictions § 181 (1995), states: “Generally speaking, restrictions built around the terms ‘residence’ or ‘residential purposes,’ without more, merely limit the use of the property to living purposes as distinguished from business or commercial purposes.” And similar provisions are interpreted accordingly: the construction of a garage to be used in connection with a residence does not violate a restriction limiting a residence to a “single dwelling house, together with any necessary and suitable outbuildings.” C.J.S. Deeds § 361 (2001); but, a “restriction prohibiting the erection of any | ¿building other than a dwelling house is violated by the erection of a private garage.” Id.
Under Louisiana law, we are bound to resolve any doubt as to the existence, validity or extent of building restrictions in favor of the unrestricted use of immov-ables.[3] La. C.C. art. 783. Here, the trial court’s finding that the workshop was not being used for residential purposes is unsupported by any evidence. Accordingly, the trial court erred in finding the Dun-hams had violated Restriction 5.
2. Use of Adjacent Lot
Restriction 21, entitled “TEMPORARY HOUSING,” contains the following language: “No accessory building shall be constructed or used unless the dwelling on the lot is completed or under construction.” The Seals argue that this restriction precluded the Dunhams from building the workshop on lot adjacent to their home.
The building restrictions, however, do not impose such a limitation. Rather, Restriction 3, entitled, “RESUBDIVISION,” suggests that lots can be attached to provide larger building sites, which is exactly what the Dunhams did. Further, it is undisputed that the Dunham home was constructed prior to the construction of the *378 workshop. Accordingly, construing all doubt about the validity or extent of Restriction 21 in favor of the unrestricted use of the Dunhams’ property in accordance with La. C.C. art. 783, we conclude the trial court erred as a matter of law in finding that the Dunhams had violated Restriction 21.
| BFurther, the record contains no evidence showing that the workshop was actually built on a lot other than the one or ones on which the house was constructed. We therefore conclude that the trial court was manifestly erroneous in its implicit finding to this effect. Accordingly, the trial court erred in this regard as well.
3. Building Materials
Restriction 6, entitled “Building Material,” states in pertinent part that, “No building shall ... be covered with corrugated or other types of sheet metal .... ” The Dunhams acknowledge that their workshop is covered with corrugated metal. They argue, however, that this restriction has been abandoned. The trial court disagreed. And in this regard, the trial court was not manifestly erroneous.
Abandonment, as it relates to building restrictions, is governed by La. C.C. art. 782, which provides:
Building restrictions terminate by abandonment of the whole plan or by a general abandonment of a particular restriction. When the entire plan is abandoned the affected area is freed of all restrictions; when a particular restriction is abandoned, the affected area is freed of that restriction only.
Abandonment of a particular restriction is predicated on a sufficient number of violations of that restriction in relation to the number of lots affected by it. See Revision Comments, La. C.C. art. 782. Further, once a violation of a building restriction has been established, the burden shifts to the violator to prove abandonment of a particular restriction. To determine whether building restrictions have been abandoned, there are three areas of consideration: the number of violations, the character of those violations, and the adverse reaction of property owners to those violations. Belle Terre Lakes Home Owners Association v. McGovern, 01-722 (La.App. 5 Cir. 1/29/02), 805 So.2d 1286.
[ fiHere, the trial court found that 5 of 21 lots in the subject subdivision had accessory buildings or sheds with metal roofs but that the Dunhams’ workshop was the only one that was also sided with corrugated metal. The trial court then found as a fact that the metal roofed buildings and sheds did not subvert the general plan or scheme of the subdivision and concluded that they could not serve to establish abandonment of the restrictions. The trial court did not address the homes covered with metal roofs.
While we may have evaluated the evidence differently in this regard, we cannot disturb on review the trial court’s reasonable inferences of fact. See Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). The trial court’s finding that metal roofs did not subvert the general plan or scheme of the subdivision is reasonable and not manifestly erroneous. Therefore, its conclusions that the pertinent building restriction had not been abandoned and that the Dunhams were in violation are not erroneous.
SCOPE OF INJUNCTION
On concluding that the Dunhams had violated three building restrictions in their subdivision, the trial court granted a mandatory injunction pursuant to La. C.C. Art. 779 and ordered the Dunhams’ workshop removed. Since we conclude that the Seals have proven only a violation of Restriction 6 concerning use of metal siding, it appears that removal of the building *379 from the site is be an overbroad remedy. We observe that an injunction is a harsh, drastic, and extraordinary remedy. Lassalle v. Daniels, 96-0176, p. 8 (La.App. 1 Cir. 5/10/96), 673 So.2d 704, 709.
The Dunhams argue that the noncompliance can be removed by covering the workshop with some type of siding such that it is no longer | ./‘covered with corrugated or other types of sheet metal.” If the noncompliance can be cured in this manner, the Dunhams should be allowed to cure the noncompliance rather than remove the structure. See Travasos v. Stoma, 95-1568, p. 8 (La.App. 3 Cir. 4/3/96), 672 So.2d 1070, 1074-1075. Accordingly, we will remand this matter to the trial court to determine whether the siding on the workshop on the Dunhams’ property can be brought into compliance with the Restriction 6 and, if so, the best method for doing so.
DECREE
For reasons stated, the judgment of the trial court is affirmed insofar as it grants a mandatory injunction against the Dun-hams in favor of the Seals. However, we vacate the portion of the judgment requiring the removal of the metal workshop building on the Dunhams’ property. We remand the matter to the trial court with instruction to allow the Dunhams to bring the siding of the workshop into compliance with Restriction 6, if they can do so. If they cannot or will not, the trial court may then order the removal of the workshop from the Dunham property. Costs are divided equally between Richard and Dree Seal and Richard and Annette Dunham.
AFFIRMED IN PART; VACATED IN PART; REMANDED WITH INSTRUCTION.

. • The restrictions contain no size limitation for accessory buildings.

. The issue in Concord Estates was whether a building restriction designating all lots as residential excluded use of the property as a group home.

. But see the Louisiana Homeowners Association Act, La. R.S. 1141.1 — 1141.9, which applies when a residential planned community exists with mandatory membership in a homeowners' association. The Act says that building restrictions are to be construed liberally to give effect to the purpose and intent of the restrictions. Here, however, the Louisiana Homeowners Association Act does not control because the restrictions create no homeowners’ association and require no mandatory membership.'