The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Richard Eugene STANLEY, a/k/a Rick
Eugene Stanley, Jr., Defendant–
Appellant.

No. 04CA2164.

Colorado Court of Appeals,
Div. V.

April 5, 2007.

Rehearing Denied June 14, 2007.

Certiorari Denied Nov. 19, 2007.

John W. Suthers, Attorney General, Matthew D. Grove, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Haddon, Morgan, Mueller, Jordan, Mackey & Foreman, P.C., Norman R. Mueller, Rachel A. Bellis, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge J. JONES.

Defendant, Richard Eugene Stanley, appeals his convictions for two counts of attempting to influence a public official, contending, among other things, that the statute he was convicted of violating, § 18–8–306, C.R.S.2006, was applied to him in violation of his right to freedom of speech under the First Amendment to the United States Constitution. We disagree with defendant's constitutional argument, and affirm the judgment of conviction.

## I. Background

On September 7, 2002, defendant was charged with violating City of Thornton Municipal Code § 38–237 by carrying a dangerous weapon—namely, a loaded .357 magnum handgun. Thornton Municipal Judge Charles Rose presided at defendant's trial. Defendant, representing himself, argued that § 38–237 is unconstitutional in that it infringed on his rights under the Colorado Constitution to defend himself and to bear arms. Judge Rose found defendant guilty after a bench trial, and sentenced defendant to serve ninety days in jail and to pay a $500 fine.

Defendant appealed his conviction to the Adams County District Court, again arguing that § 38–237 is unconstitutional. Judge Donald W. Marshall, Jr. affirmed defendant's conviction. Defendant did not further appeal this conviction or sentence.

Defendant failed to appear on the date ordered to begin serving his sentence. In-

stead, defendant's secretary, at defendant's direction, hand delivered a document to the City of Thornton Municipal Court labeled, "Notice and Order." The "Notice and Order" stated:

This NOTICE to Judge Charles Rose is in regard to Stanley's gun charge and arrest of openly carrying a weapon, in violation of Thornton Ordinance TRMC38–237. This ordinance violates Colorado Constitution Art. 2, Sec.3, by interfering with his natural, essential, and inalienable right to self defense, under the color of law, for the arrest, charge, and conviction against Rick Stanley. The signing of SB25 on March 18, 2003, affirms Article 2, Sec. 3, of the State Constitution, and preempts this ordinance. Rick Stanley demands that Judge Charles Rose, overturn this conviction of Stanley on constitutional grounds. Failure to do so will result in a treason charge against Charles Rose for failure to uphold the oath of office to defend the Constitutions, which this Court has a copy of, and Charles Rose swore to, as a "condition" of his office. This treason charge, will result in a Mutual Defense Pact Militia warrant for Charles Rose's arrest if the following conditions are not met:

1. Overturn the unconstitutional conviction of Rick Stanley for violation of TRMC 38–237 because TRMC 38–237 violates the constitutional rights of Rick Stanley, under the guise of "color of law."

2. Return the $1,500.00 bond to Rick Stanley.

3. Return Rick Stanley's property which consists of 1 each Smith and Wesson 6 shot .357 pistol and 6 each .357 bullets.

This court is notified, once more, as Stanley gave Notice from the beginning of the proceeding against him, Thornton Municipal Court has "NO" jurisdiction over him in this matter.

Accordingly, this ORDER is affirmed.

Rick Stanley

On the following day, defendant's secretary, again at defendant's direction, mailed a similar "Notice and Order" to Judge Mar-

shall at the Adams County District Court and to the Adams County District Court.

Defendant was charged, in separate cases, with two counts of attempting to influence a public servant in violation of § 18–8–306, a class four felony. The two cases were subsequently consolidated.

Acting pursuant to § 18–1–1001, C.R.S. 2006, the court issued protection orders against defendant for the benefit of Judge Rose and Judge Marshall, both of which defendant refused to accept. In addition, both Judge Rose and Judge Marshall were placed under police and SWAT team protection.

Prior to trial, defendant moved to dismiss the charges on the ground § 18–8–306 is unconstitutionally overbroad as applied in this case because the "Notices" constituted speech protected by the First Amendment. Following a hearing, the court denied that motion.

Senior Judge Joseph R. Quinn, a former Chief Justice of the Colorado Supreme Court, presided at defendant's trial, at which defendant was represented by counsel. A jury found defendant guilty of both charges. Judge Quinn sentenced defendant to six years imprisonment in the Department of Corrections (three years for each offense, to run consecutively), plus three years of mandatory parole. Judge Quinn also assessed a total of $10,000 in fines ($5,000 for each offense), and ordered defendant to pay $8,249.64 in restitution.

## II. Discussion

### A. Section 18–8–306 is not Unconstitutionally Overbroad as Applied to Defendant's Statements

Defendant argues that his convictions must be reversed because the statements contained in the two "Notices" were protected by the Free Speech Clause of the First Amendment of the United States Constitution. Specifically, defendant argues that § 18–8–306 is unconstitutionally overbroad as applied in this case because his statements did not constitute "true threats." While we agree that the threats of violence prohibited by § 18–8–306 are limited to "true threats,"

as that term is properly understood in the First Amendment context, we disagree with defendant's contention that the People did not prove that his statements constituted true threats. Accordingly, we conclude that § 18-8-306 was not unconstitutionally applied to defendant.

### 1. Section 18-8-306

Section 18-8-306 provides:

Any person who attempts to influence any public servant by means of deceit or by threat of violence or economic reprisal against any person or property, with the intent thereby to alter or affect the public servant's decision, vote, opinion, or action concerning any matter which is to be considered or performed by him or the agency or body of which he is a member, commits a class 4 felony.

■ "The critical elements of this offense are (1) an attempt to influence a public servant (2) by means of deceit or by threat of violence or economic reprisal (3) with the intent to alter or affect the public servant's decision or action." *People v. Norman*, 703 P.2d 1261, 1269 (Colo.1985); *accord People v. Janousek*, 871 P.2d 1189, 1194 (Colo.1994); *People v. Schupper*, 140 P.3d 293, 298 (Colo. App.2006).

### 2. The "True Threat" Requirement

■ While the First Amendment protects the right to free speech, its protection is not absolute. *Virginia v. Black*, 538 U.S. 343, 358, 123 S.Ct. 1536, 1547, 155 L.Ed.2d 535 (2003). Some categories of speech are unprotected by the First Amendment, and the government may permissibly regulate speech that falls within these categories. *Black, supra*, 538 U.S. at 358, 123 S.Ct. at 1547; *People v. Hickman*, 988 P.2d 628, 638 (Colo. 1999). One such category is "true threats." *Black, supra*, 538 U.S. at 359, 123 S.Ct. at 1547–48; *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–72, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942) (identifying several types of statements that have "never been thought to raise any Constitutional problem"); *see also R.A.V. v. City of St. Paul*, 505 U.S. 377, 388, 112 S.Ct. 2538, 2546, 120 L.Ed.2d 305 (1992); *Watts v. United States*, 394 U.S. 705, 707, 89 S.Ct. 1399, 1401, 22 L.Ed.2d 664 (1969); *Janousek, supra*, 871 P.2d at 1193 (person "has no constitutionally protected right to make threats of violence to a public servant").

The "true threat" requirement is generally regarded as having its origin in the Supreme Court's decision in *Watts, supra*. The defendant in that case was convicted of violating 18 U.S.C. § 871, which proscribes making a threat against the President. The conviction was based on the defendant's statement at a political rally against the Vietnam War that "[i]f they ever make me carry a rifle the first man I want to get in my sights is L.B.J." *Watts, supra*, 394 U.S. at 706, 89 S.Ct. at 1401. While the Court held that the statute was constitutional on its face, it also held that it must be interpreted to distinguish between "true threats," which may be proscribed, and "political hyperbole," which may not be. *Watts, supra*, 394 U.S. at 707–08, 89 S.Ct. at 1401. Because the Court determined that the statement, considered in context, could not be interpreted as other than political hyperbole, it reversed the defendant's conviction. *Watts, supra*, 394 U.S. at 708, 89 S.Ct. at 1402.

Since *Watts*, the Supreme Court has not definitively articulated the meaning of "true threats." In *Black, supra*, however, the Supreme Court said: " 'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Black, supra*, 538 U.S. at 359, 123 S.Ct. at 1548; *see also Janousek, supra*, 871 P.2d at 1198 (Mullarkey, J., specially concurring) ("A 'true threat' is a serious threat, as opposed to mere political argument, talk or jest....").

■ Any statute that criminalizes threats must, of course, be applied and interpreted consistently with the First Amendment. *Watts, supra*, 394 U.S. at 707, 89 S.Ct. at 1401; *Hickman, supra*, 988 P.2d at 639–41. Accordingly, we agree with the parties that § 18-8-306 must be interpreted to limit criminal culpability to statements constituting "true threats." *See Watts, supra*, 394 U.S. at 708, 89 S.Ct. at 1401; *Hickman,*

*supra*, 988 P.2d at 639–41; *State v. Johnston*, 156 Wash.2d 355, 127 P.3d 707, 711–12 (2006). Indeed, in *Janousek, supra*, our supreme court appears to have interpreted § 18–8–306 as so limited.

We turn, then, to defendant's principal contention: namely, that the Supreme Court in *Black* altered the true threat analysis so as to require proof that the maker of the threat subjectively intended to threaten, and that his conviction cannot stand because there was no evidence that he subjectively intended to threaten Judge Rose or Judge Marshall.

### 3. Intent

Defendant testified in the trial court that he sent the "Notices" with the intent of influencing Judge Rose and Judge Marshall to reverse his conviction for violating Thornton Municipal Code § 38–237. Thus, the record reveals that defendant possessed the specific intent required by the plain language of § 18–8–306 ("with the intent ... to alter or affect the public servant's decision"), and defendant does not contend otherwise on appeal.

■ Defendant nevertheless argues that the First Amendment, as applied by the Supreme Court in *Black*, requires an additional showing of specific intent to secure a conviction under § 18–8–306; specifically, that the speaker must have subjectively intended to make a threat of unlawful violence. We are not persuaded.

Defendant's argument presents a question of law which we review de novo. *Lewis v. Colo. Rockies Baseball Club, Ltd.*, 941 P.2d 266, 270–71 (Colo.1997); *Holliday v. Reg'l Transp. Dist.*, 43 P.3d 676, 681 (Colo.App. 2001).

Section 18–8–306 has been construed as criminalizing certain threats as viewed from an objective, reasonable person's perspective. *See Janousek, supra*, 871 P.2d at 1198 (Mullarkey, J., specially concurring) (threat evaluated by "whether those who hear or read the threat reasonably consider that an actual threat has been made"); *People v. McIntier*, 134 P.3d 467, 472 (Colo.App.2005)(same). After *Watts*, and prior to *Black*, courts con-

struing other criminal statutes proscribing certain types of threats almost uniformly applied an objective standard (from either the speaker's or the recipient's perspective) to determine whether a statement was a true threat. *See, e.g., People v. Baer*, 973 P.2d 1225, 1231, 1233 (Colo.1999) (threat cognizable under § 18–9–111, criminalizing harassment by stalking, assessed under "an objective 'reasonable person' standard"); *United States v. Fulmer*, 108 F.3d 1486, 1490–91 (1st Cir.1997); *United States v. Aman*, 31 F.3d 550, 553–56 (7th Cir.1994); *United States v. Malik*, 16 F.3d 45, 49 (2d Cir.1994); *United States v. Kosma*, 951 F.2d 549, 556–57 (3d Cir.1991); *United States v. Orozco–Santillan*, 903 F.2d 1262, 1265 (9th Cir.1990). *But see United States v. Patillo*, 438 F.2d 13, 15 (4th Cir.1971) (en banc) (in prosecution for threatening the President, the prosecution must prove a present intent to do injury if the threat is communicated to someone other than the President). *See generally* Note, *"True Threats" and the Issue of Intent*, 92 Va. L.Rev. 1225 (2006). Indeed, even prior to *Watts*, courts typically interpreted statutes proscribing threats as requiring proof that a reasonable person would perceive the statement as a threat. *See, e.g., Ragansky v. United States*, 253 F. 643, 644–45 (7th Cir. 1918).

In *Black*, the Supreme Court examined three defendants' convictions under a Virginia statute which made it unlawful for a person "with the intent of intimidating any person or group of persons, to burn, or cause to be burned, a cross on the property of another, a highway or other public place." *Black, supra*, 538 U.S. at 348, 123 S.Ct. at 1541. The Court concluded that the statute was not constitutionally overbroad, but was unconstitutional insofar as it provided that "[a]ny such burning of a cross shall be prima facie evidence of an intent to intimidate," because the presumption would permit conviction for cross burnings that merely constituted political speech. In addressing the overbreadth question, the Court briefly discussed the concept of true threats:

> "True threats" encompass those statements where the speaker means to communicate a serious expression of an intent

to commit an act of unlawful violence to a particular individual or group of individuals. . . . The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats "protect[s] individuals from the fear of violence" and "from the disruption that fear engenders," in addition to protecting people "from the possibility that the threatened violence will occur."

*Black, supra,* 538 U.S. at 359–60, 123 S.Ct. at 1548 (citations omitted)(quoting in part *R.A.V., supra,* 505 U.S. at 388, 112 S.Ct. at 2546). The Court then proceeded to define intimidation, the object proscribed by the statute at issue, as follows: "Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." *Black, supra,* 538 U.S. at 360, 123 S.Ct. at 1548.

Since *Black* was decided, only a few courts have directly addressed the argument that *Black* requires proof of the speaker's subjective intent to threaten. *Compare United States v. D'Amario,* 461 F.Supp.2d 298, 301 (D.N.J.2006) (no such proof required); *New York ex rel. Spitzer v. Cain,* 418 F.Supp.2d 457, 478–79 (S.D.N.Y.2006) (same); *United States v. Bly,* (W.D.Va. No. CRIM.3:04CR00011, Oct. 14, 2005), 2005 WL 2621996 (same); *United States v. Ellis,* (E.D.Pa. No. CR.02–687–1, July 15, 2003), 2003 WL 22271671 (same); *and People v. Pilette,* (Mich.Ct.App. No. 266395, Nov. 21, 2006), 2006 WL 3375200 (same), *with United States v. Cassel,* 408 F.3d 622, 631–33 (9th Cir.2005) (such proof is required under 18 U.S.C. § 1860, which prohibits intimidating a person not to bid on or buy federal land). *See also United States v. Hankins,* 195 Fed. Appx. 295, 2006 WL 2787074 (6th Cir.2006) (not selected for publication) (citing *Black* as support for the objective test); *United States v. Romo,* 413 F.3d 1044, 1051 & n. 6 (9th Cir.2005) (applying objective standard to statute proscribing threats against the President, and interpreting the holding in *Cassel* as inapplicable to such threats), *cert. denied,* 547 U.S. 1048, 126 S.Ct. 1638, 164 L.Ed.2d 348 (2006); *Porter v. Ascension Parish School Bd.,* 393 F.3d 608, 616 & nn. 25–27

(5th Cir.2004) (continuing to apply objective test while acknowledging *Black's* definition of true threats), *cert. denied,* 544 U.S. 1062, 125 S.Ct. 2530, 161 L.Ed.2d 1112 (2005); *United States v. Carmichael,* 326 F.Supp.2d 1267, 1280 (M.D.Ala.2004) (acknowledging the decision in *Black,* but concluding that "[t]he Supreme Court has not settled on a definition of a 'true threat' "); *Citizen Publ'g Co. v. Miller,* 210 Ariz. 513, 115 P.3d 107, 114–15 (2005) (treating the "reasonable person" test applied in earlier cases as "substantially similar" to the test articulated in *Black); State v. DeLoreto,* 265 Conn. 145, 827 A.2d 671, 680 (2003) (acknowledging *Black's* formulation of a true threat and applying objective test).

We are persuaded by the reasoning of the cases rejecting the subjective speaker standard.

■ Fundamentally, the reason threats of violence are not protected by the First Amendment is because they serve none of the purposes of the First Amendment: they do not express ideas or opinions, and are not part of the marketplace of ideas in which there is dialogue. *Shackelford v. Shirley,* 948 F.2d 935, 938 (5th Cir.1991); *United States v. Velasquez,* 772 F.2d 1348, 1356–57 (7th Cir.1985) (cited with approval in *Hickman, supra,* 988 P.2d at 638 n. 7). The First Amendment does not protect a statement that a reasonable speaker or a reasonable recipient would perceive as a threat of harm (as opposed to mere political hyperbole) on the basis that, notwithstanding the content of the statement, the speaker may not have intended the recipient to perceive a threat. Such a threat of violence is no more an idea, opinion, or part of a dialogue in the marketplace of ideas than if it had been made with such intent. The threat remains, in either event, devoid of content protected by the First Amendment.

Moreover, prohibitions against threats of violence serve the legitimate purpose of protecting the recipient of the statement "from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur." *R.A.V., supra,* 505 U.S. at 388, 112 S.Ct. at 2546; *see*

also *Black, supra,* 538 U.S. at 360, 123 S.Ct. at 1548; *Cain, supra,* 418 F.Supp.2d at 479; *Hickman, supra,* 988 P.2d at 638.

This purpose is not served by hinging constitutionality on the speaker's subjective intent or capacity to do (or not to do) harm. Rather, these factors go to how reasonably foreseeable it is to a speaker that the listener will seriously take his communication as an intent to inflict bodily harm.

*Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coalition of Life Activists,* 290 F.3d 1058, 1076 (9th Cir.2002) (en banc); *see also Kosma, supra,* 951 F.2d at 556–57; *D'Amario, supra,* 461 F.Supp.2d at 301; *Cain, supra,* 418 F.Supp.2d at 479 ("A standard for [true] threats that focused on the speaker's subjective intent to the exclusion of the effect of the statement on the listener would be dangerously under inclusive with respect to the first two rationales for the exemption of threats from protected speech.").

Contrary to defendant's contention, *Black* does not hold that subjective intent to threaten must be proved. Defendant relies on two statements in *Black.* The first is the formulation of a true threat quoted above: " 'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Black, supra,* 538 U.S. at 359, 123 S.Ct. at 1548. This formulation requires an intent "to communicate a serious expression of" a threat, not the specific intent that the language be perceived by others as threatening. *Cain, supra,* 418 F.Supp.2d at 479; *People v. Pilette, supra; see also Fogel v. Grass Valley Police Dep't,* 415 F.Supp.2d 1084, 1087 (E.D.Cal.2006).

The second statement in *Black* on which defendant relies is the Court's definition of "intimidation" quoted above: "Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." *Black, supra,* 538 U.S. at 360, 123 S.Ct. at 1548. This statement, however, must be read in

context of the Court's statement just three sentences earlier characterizing the relevant intent as an intent to communicate. Further, we do not read this statement as precluding a determination of the speaker's intent based on an objective standard—that is, how a reasonable speaker would anticipate the statement would be perceived by those to whom it was communicated. Finally, the statement merely defines "intimidation," the type of true threat proscribed by the statute at issue in *Black.* We do not read *Black* as requiring a similar definition for all types of true threats. Here, § 18–8–306 proscribes not intimidation, but attempting to influence a public servant by means of deceit, threat of violence, or economic reprisal.

We acknowledge that reasonable persons can read *Black* differently. However, given that courts have, prior to *Black,* defined "true threat" in numerous contexts according to an objective standard, and have done so virtually unanimously, we think it highly unlikely the Supreme Court in *Black* intended to effectively overrule that vast body of precedent sub silentio.

In sum, we reject defendant's argument that the First Amendment required the People to prove that he subjectively intended to threaten Judge Rose and Judge Marshall.

### 4. No Privilege for Making Threats in Judicial Proceedings

Defendant also contends his statements are privileged—that is, he is immune from prosecution for the statements—because they were made "in pleadings filed by a *pro se* litigant attempting to forcefully, albeit belligerently, make his point." Again, we disagree.

This contention also presents a question of law subject to de novo review. *See NBC Subsidiary (KCNC–TV), Inc. v. Living Will Center,* 879 P.2d 6, 11 (Colo.1994) (whether defamatory language is constitutionally privileged is a question of law subject to de novo review).

 True threats, "however communicated," are not protected by the First Amendment. *Hickman, supra,* 988 P.2d at 638 (quoting *Madsen v. Women's Health*

*Center, Inc.,* 512 U.S. 753, 773, 114 S.Ct. 2516, 2529, 129 L.Ed.2d 593 (1994)). Such threats are not entitled to heightened constitutional protection simply because they are made in the context of a pleading, or in any other public forum, as opposed to in a private setting, because, as noted, they do not further any of the purposes of the First Amendment. *See Shackelford, supra,* 948 F.2d at 938; *Velasquez, supra,* 772 F.2d at 1356–57.

The cases cited by defendant in support of this argument are inapposite. All of them concerned immunity from defamation liability. None involved prosecution for true threats. *See McDonald v. Lakewood Country Club,* 170 Colo. 355, 364, 461 P.2d 437, 442 (1969); *Renner v. Chilton,* 142 Colo. 454, 455–56, 351 P.2d 277, 277 (1960); *Club Valencia Homeowners Ass'n, Inc. v. Valencia Assocs.,* 712 P.2d 1024, 1027 (Colo.App.1985). Defendant cites no case, and we have not found one, holding that a criminal defendant has a First Amendment privilege to threaten violence against a judge if he does so in the context of a court proceeding.

### 5. Sufficiency of the Evidence

Defendant also contends that the statements in his "Notices," when viewed in context, were not "true threats." We disagree.

■ Essentially, this contention is a challenge to the sufficiency of the evidence. "When the sufficiency of the evidence is challenged on appeal, the reviewing court must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt." *McIntier, supra,* 134 P.3d at 471.

While the question whether a statement is a "true threat," as opposed to protected speech, is, in the first instance, one of fact to be determined by the fact finder, *see McIntier, supra,* 134 P.3d at 474; *Johnston, supra,* 127 P.3d at 712, where First Amendment concerns are implicated, we have an obligation to make an independent review of the record as a whole in order to assure that the judgment does not impermissibly intrude on the field of free expression. *See Bose Corp.*

*v. Consumers Union, Inc.,* 466 U.S. 485, 499, 104 S.Ct. 1949, 1958, 80 L.Ed.2d 502 (1984); *Lewis, supra,* 941 P.2d at 270–71; *DeLoreto, supra,* 827 A.2d at 679; *Johnston, supra,* 127 P.3d at 712.

■ In determining whether a statement constitutes a true threat, we first consider the plain import of the words used. *See Janousek, supra,* 871 P.2d at 1193, 1195 (noting the forceful language of the statement and the explicit and implicit threat expressed thereby); *McIntier, supra,* 134 P.3d at 472. We must also consider the context in which the statement was made. *McIntier, supra,* 134 P.3d at 472; *see Black, supra,* 538 U.S. at 367, 123 S.Ct. at 1551; *Watts, supra,* 394 U.S. at 708, 89 S.Ct. at 1402; *Hickman, supra,* 988 P.2d at 639; *Janousek, supra,* 871 P.2d at 1198 (Mullarkey, J., specially concurring). Some of the contextual factors that may be considered include (1) to whom the statement is communicated; (2) the manner in which the statement is communicated; and (3) the subjective reaction of the person whom the statement concerns. *See R.A.V., supra,* 505 U.S. at 388, 112 S.Ct. at 2546; *Watts, supra,* 394 U.S. at 708, 89 S.Ct. at 1402; *Cain, supra,* 418 F.Supp.2d at 475; *Janousek, supra,* 871 P.2d at 1194–95; *McIntier, supra,* 134 P.3d at 472; *Citizen Publ'g Co., supra,* 115 P.3d at 115.

■ We conclude that a reasonable juror could find, based on the evidence submitted, and consistent with the First Amendment, that the Notices contained true threats, whether viewed from the perspective of a reasonable speaker or a reasonable recipient.

Contrary to defendant's contention, the language in the Notices is not merely "a prediction of political theater" or "metaphorical." *See Watts, supra,* 394 U.S. at 706–08, 89 S.Ct. at 1401–02 (threats of violence that are merely "political hyperbole" are protected speech); *Hickman, supra,* 988 P.2d at 639 (same). Rather, the Notices expressly threatened the judges with "arrest" by a "Mutual Defense Pact Militia," an act in which the prospect of physical violence is inherent. *Cf. Malik, supra,* 16 F.3d at 49–50 (threat of armed robbery unless judges reversed decisions was, together with other

statements, a true threat). They also threaten a "charge" of treason, an offense punishable by death. *Cf. United States v. Schiefen,* 139 F.3d 638 (8th Cir.1998) (upholding conviction for threatening a federal judge where letter defendant mailed to judge stated that the punishment for treason is death); *United States v. Daughenbaugh,* 49 F.3d 171, 173–74 (5th Cir.1995) (letters to judges threatening treason charges and death sufficient to support convictions for mailing threatening statements); *see also* 18 U.S.C. § 2381 (treason is punishable by death).

The Notice to Judge Rose was filed in the case in which Judge Rose had presided, and the Notice to Judge Marshall was mailed to the judge. Thus, the threats were conveyed directly to the persons threatened; defendant did not merely communicate them to a stranger to his court proceedings. *See McIntier, supra,* 134 P.3d at 472.

Moreover, both judges felt threatened by the Notices. Judge Rose testified that he was afraid for his life as a result of defendant's "Notice." Judge Marshall testified that he was alarmed by the "Notice" and perceived the document as a direct and immediate threat to his personal safety. The subjective reactions of the persons to whom the Notices were directed support (but do not compel) the conclusion that statements therein were true threats. *United States v. Alaboud,* 347 F.3d 1293, 1298 (11th Cir.2003); *Fulmer, supra,* 108 F.3d at 1499–500.

We reject defendant's contention that his statements necessarily constituted mere "criticism" of the judges. Defendant cites *In re Green,* 11 P.3d 1078 (Colo.2000), for the proposition that criticism of judges is protected speech. *In re Green* is inapposite, however. A merely critical remark and a threat of violence (if a true threat) are substantially different in a constitutionally meaningful way. A statement of critical opinion about a judge is protected (assuming it does not imply a false statement of fact) because it serves the principal purpose of the First Amendment—to safeguard public discussion of governmental affairs. *In re Green, supra,* 11 P.3d at 1084–85. A threat of violence against a judge, on the other hand, is not an expression of an idea or opinion, or part of a public dialogue in the marketplace of ideas. The statements at issue here threaten violence.

In sum, we conclude that the evidence is sufficient to support defendant's convictions.

### B. The Jury Instructions Were Not Erroneous

Defendant contends that the jury instructions setting forth the elements of the offense and defining a threat were constitutionally deficient because they (1) incorrectly stated that a "threat of violence" is not protected by the First Amendment; (2) failed to include the "new" element of the speaker's subjective intent to threaten; and (3) established a conclusive presumption that the statements in the Notices were not true threats. We disagree with all three contentions.

#### 1. Instructions Nos. 10 and 11

Instruction No. 10 stated:

The elements of the crime of Attempt to Influence a Public Servant are:

1. That the defendant,

2. in the State of Colorado, at or about the date and place charged,

3. with intent to alter or affect the public servant's decision, vote, opinion or action,

4. concerning any matter which is to be considered or performed by the public servant,

5. knowingly,

 a. attempts to influence the public servant,

b. by means of deceit, or by threat of violence.

After considering all the evidence, if you decide the prosecution has proven each of the elements beyond a reasonable doubt, you should find the defendant guilty of Attempt to Influence a Public Servant.

After considering all the evidence, if you decide the prosecution has failed to prove any one or more of the elements beyond a reasonable doubt, you should find the defendant not guilty of Attempt to Influence a Public Servant.

Instruction No. 11 defined "threat" as follows:

> "Threat" means a statement or statements that are likely to induce a belief in a reasonable person that the stated act or actions of unlawful violence will be carried out. The speaker or author need not intend to carry out the threat. A threat of violence is not protected under the free speech provisions of the Colorado or Federal Constitutions, nor under the constitutional provisions regarding the right to petition the government for redress of grievances. Words used as mere political argument, or as idle talk or in jest, even if made in a very crude or offensive manner, do not constitute a threat.

### 2. Standard of Review

We agree with the parties that because defendant failed to object to these particular jury instructions at trial, defendant's contention of error with respect thereto is reviewable only for plain error. Crim. P. 30, 52(b); *People v. Miller*, 113 P.3d 743, 749, 751 (Colo.), *cert. denied*, 546 U.S. 1021, 126 S.Ct. 663, 163 L.Ed.2d 536 (2005); *People v. Grant*, ─── P.3d ───, ───, 2007 WL 177679 (Colo.App. No. 03CA1034, Jan. 25, 2007).

■ Plain error is obvious and substantial error that "so undermined the fundamental fairness of the trial itself ... as to cast serious doubt on the reliability of the judgment of conviction." *Miller, supra*, 113 P.3d at 750 (quoting *People v. Sepulveda*, 65 P.3d 1002, 1006 (Colo.2003)). "As applied to jury instructions, the defendant must 'demonstrate not only that the instruction affected a substantial right, but also that the record reveals a reasonable possibility that the error contributed to his conviction.' " *Miller, supra*, 113 P.3d at 750 (quoting in part *People v. Garcia*, 28 P.3d 340, 344 (Colo.2001)).

■ When reviewing jury instructions for plain error, we must look at the instructions as a whole. *Miller, supra*, 113 P.3d at 751; *Grant, supra*, ─── P.3d at ───.

■ "The trial court has the duty to instruct the jury properly on all matters of law, and the failure to do so with respect to the essential elements of the offense constitutes plain error." *People v. Freeman*, 668 P.2d 1371, 1382 (Colo.1983); *see also People v. Montoya*, 141 P.3d 916, 920 (Colo.App. 2006). At the same time, however, a trial court's "failure to instruct the jury properly does not constitute plain error if the relevant instruction, read in conjunction with other instructions, adequately informs the jury of the law." *Miller, supra*, 113 P.3d at 750. "Moreover, an erroneous jury instruction does not normally constitute plain error where the issue is not contested at trial or where the record contains overwhelming evidence of the defendant's guilt." *Miller, supra*, 113 P.3d at 750.

### 3. Threat of Violence

■ Defendant argues that Instruction No. 11 incorrectly stated that a threat of violence is not protected by the First Amendment. We conclude that the instruction, considered in its entirety, is not erroneous.

■ In some circumstances, a threat of violence may be protected by the First Amendment. *See Watts, supra*, 394 U.S. at 706–08, 89 S.Ct. at 1401–02; *Hickman, supra*, 988 P.2d at 639. That protection exists where the threat of violence is, viewed in context, nothing more than "political hyperbole." *Watts, supra*, 394 U.S. at 706–08, 89 S.Ct. at 1401–02; *Hickman, supra*, 988 P.2d at 639; *see also Janousek, supra*, 871 P.2d at 1198 (Mullarkey, J., specially concurring) (threats that are "mere political argument, talk or jest" are protected).

Here, while Instruction No. 11 stated that threats of violence are not protected free speech, it also stated in the next sentence that words "used as mere political argument, or as idle talk or in jest" are not threats. Thus, Instruction No. 11 properly distinguished between threats of violence that are true threats and those that are not.

### 4. Speaker's Intent to Threaten

Defendant contends the instructions should have included the "new" element of the offense that the speaker subjectively intended to threaten. We have concluded, however, that the objective standard applies to determine whether a statement is a true threat.

Thus, the trial court did not err in failing to instruct the jury that the People were required to prove defendant's subjective intent to threaten.

### 5. Conclusive Presumption

Defendant argues that because the trial court failed to properly define "threat" in the jury instructions, the instructions compelled the jury to conclusively presume that he intended his statements to threaten. However, this argument also presupposes, erroneously, that the People were required to prove such intent. Further, we do not perceive any conclusive presumption suggested by the instructions.

■■■ Conclusive presumptions "relieve[ ] the prosecution of its burden of persuasion by removing the presumed element from the case entirely when the prosecution proves the predicate fact on which the presumption is based." *Jolly v. People,* 742 P.2d 891, 896 (Colo.1987). Conclusive presumptions violate the due process rights of defendants because they "can reasonably be interpreted by the factfinder as a mandate to find the presumed element of the crime upon proof of the predicate fact, and thus clash[ ] directly with the presumption of innocence and the constitutional requirement of prosecutorial proof beyond a reasonable doubt." *Jolly, supra,* 742 P.2d at 897; *see also People v. Felgar,* 58 P.3d 1122, 1124 (Colo.App.2002). "The critical consideration in determining the validity of [the instruction] is whether a reasonable jury could have understood the instruction as relieving the state of its burden of persuasion on an essential element of the crime." *Jolly, supra,* 742 P.2d at 898. The focus of this analysis "must be on the specific language of the instruction itself." *Jolly, supra,* 742 P.2d at 898.

■■■ Here, the jury instruction defining "threat"—Instruction No. 11—did not mandate or compel the jury to conclude that the Notices contained "true threats." *See Jolly, supra,* 742 P.2d at 898 (jury instruction established a conclusive presumption where it used language such as "shall"). Rather, it distinguished between such threats and those that are merely political argument, idle talk, or made in jest. Moreover, Instruction No. 10 specifically told the jurors that they could find defendant guilty only if they found that the People proved all elements of the offense beyond a reasonable doubt. Thus, we conclude that a reasonable juror could not have interpreted Instructions Nos. 10 and 11 as relieving the prosecution of its burden of proof as to the element of a threat. *See Montoya, supra,* 141 P.3d at 920–21; *cf. People v. Bostic,* 148 P.3d 250, 258–59 (Colo.App. 2006) (instruction that told jurors where illegal drugs were found did not relieve prosecution of its burden of proof).

### C. Judge's Oath of Office

■■■ Defendant contends that his convictions are void for lack of jurisdiction because Judge Quinn did not preside over his trial under a valid oath of office and was therefore unauthorized to serve as a judge. We disagree.

The People have filed a motion with this court asking us to take judicial notice that Judge Quinn executed a valid oath of office as a senior judge on January 13, 2003 (one and one half years before defendant's trial), or, in the alternative, to supplement the record to include Judge Quinn's written oath of office and two year contract of employment as a senior judge, both of which were signed in January 2003. Defendant filed a response opposing the People's motion. The People's motion was deferred to this division. We grant the motion to take judicial notice.

Colorado Rule of Evidence 201 allows a court, "at any stage of the proceeding," to take judicial notice of adjudicative facts, so long as those facts are "not subject to reasonable dispute" and are "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." CRE 201(a), (b), (f); *see also Prestige Homes, Inc. v. Legouffe,* 658 P.2d 850, 853 (Colo.1983) (appellate court may take judicial notice of facts under CRE 201(f)).

The dates of a public official's term of office are adjudicative facts within the meaning of this rule. *See Larsen v. Archdiocese of Denver,* 631 P.2d 1163, 1164 (Colo.App.

1981) (court may take judicial notice of term of public office); *cf. Lovato v. Johnson*, 617 P.2d 1203, 1204 (Colo.1980) (court properly took judicial notice that Utah judge was a "magistrate" under Utah law); *People ex rel. Flanders v. Neary*, 113 Colo. 12, 16, 154 P.2d 48, 50 (1944) (supreme court took judicial notice of district attorney's term of office).

Further, Judge Quinn's written oath of office and contract of employment for January 2003 through January 2005 are public records of an administrative agency, specifically the Office of the State Court Administrator. We may take judicial notice of such records. *See Disabled Rights Action Committee v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n. 1 (9th Cir.2004) (court took judicial notice of state agency's contract with private entity); *cf. Vento v. Colo. Nat'l Bank*, 985 P.2d 48, 52 (Colo.App.1999) (court may take judicial notice of court's records in related proceeding); *see generally* 1 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 201.12[13] (2d ed.2006).

The oath of office and contract Judge Quinn executed show that he was authorized to serve as a senior judge throughout the course of defendant's trial court proceedings. Thus, Judge Quinn was authorized to preside over defendant's trial, and defendant's convictions are not void for lack of jurisdiction. *Cf. People v. Jachnik*, 116 P.3d 1276, 1277–78 (Colo.App.2005) (county court judge lacked jurisdiction to preside over trial in district court where People failed to identify any order authorizing such action).

Defendant nevertheless argues that the trial court lacked jurisdiction and his convictions are void because, even if Judge Quinn presided under a current and valid oath of office, he failed to file his oath of office with the secretary of state. We disagree.

■ District court judges are required by art. XII, § 9 of the Colorado Constitution to "file their oaths of office with the secretary of state." *See also* Chief Justice Directive 85–25. Though the People argue that this requirement did not apply to Judge Quinn because he was a "senior" judge rather than a "district court" judge, we will assume that the requirement was applicable to Judge Quinn.

■ However, even assuming such a filing requirement, when a public officer signs a valid oath of office but misses the deadline for filing the oath with the secretary of state, the officer still possesses the authority to carry out his or her duties as a de facto officer. *People v. Scott*, 116 P.3d 1231, 1232–33 (Colo.App.2004); *see also Nguyen v. United States*, 539 U.S. 69, 77–78, 123 S.Ct. 2130, 2135–36, 156 L.Ed.2d 64 (2003) (when a legal deficiency in a judge's appointment is merely technical, a properly appointed judge still acts under valid de facto authority); *Relative Value Studies, Inc. v. McGraw–Hill Cos.*, 981 P.2d 687, 688 (Colo.App.1999) ("a properly appointed judge, despite even a conceded violation of [a] constitutional ... requirement, does not lose his or her authority to act as judge merely because of the violation"). Thus, any failure to file Judge Quinn's oath of office with the secretary of state did not deprive the court of jurisdiction.

### III. Conclusion

For the foregoing reasons, defendant's judgment of conviction is affirmed.

Judge CARPARELLI concurs.

Judge VOGT specially concurs.

Judge VOGT specially concurring.

I agree with the majority that the judgment of conviction should be affirmed, but I reach that conclusion for reasons other than those relied on by the majority.

In my view, *Virginia v. Black*, 538 U.S. 343, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003), requires a showing that defendant subjectively intended to make a threat in order for his conviction to pass constitutional muster. Under *Black* as I read it, speech may not be constitutionally punished simply because a reasonable person would understand it as a threat, if the speaker did not mean for the speech to be so understood.

I reach this conclusion based on the *Black* Court's statement that "true threats" encompass "those statements where the speaker means to communicate a serious expression

of an intent to commit an act of unlawful violence to a particular individual or group of individuals," and on its statement that "[i]ntimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." *Black, supra,* 538 U.S. at 359–60, 123 S.Ct. at 1548. Although the majority suggests that the Court's statement regarding "intimidation" is inapplicable to this case, I believe that the acts of which defendant was convicted may fairly be characterized as intimidation, and I note that, at oral argument here, the People did not disagree with that proposition.

Further, the holding in *Black* supports the conclusion that the inquiry is subjective rather than objective. It is difficult to conceive of a situation in which an objectively reasonable viewer would not perceive cross burning as a threat; yet the Court struck down, as facially unconstitutional, a statute providing that burning a cross on the property of another, or on public property, was prima facie evidence of intent to intimidate.

I also disagree with the majority's analysis to the extent it suggests that most post-*Black* decisions have continued to apply an objective standard to determine whether speech constitutes a true threat. As the majority correctly points out, since *Black* was decided, only a few courts have directly considered whether *Black* requires proof of the speaker's subjective intent to threaten. One case cited by the majority, *United States v. Cassel,* 408 F.3d 622 (9th Cir.2005), holds that *Black* requires such subjective intent; *see also United States v. Magleby,* 420 F.3d 1136, 1139 (10th Cir.2005)(recognizing that *Black* requires "an intent to threaten," but holding that defendant's claim that jury instructions erroneously failed to include such requirement was procedurally barred). Of the five cases that the majority cites as standing for the proposition that subjective intent is not required, only two are published decisions. In the first, *United States v. D'Amario,* 461 F.Supp.2d 298 (D.N.J.2006), the issue was whether the prosecution had to prove that the defendant actually intended to carry out his threat. The court correctly recognized that, under *Black,* no such intent was required; however, that is not the issue presented here. The other published case cited by the majority, *New York ex rel. Spitzer v. Cain,* 418 F.Supp.2d 457 (S.D.N.Y. 2006), disagreed with the defendants' subjective intent argument, but ultimately concluded that the argument was "irrelevant" because: "Testimony offered at the hearing suffices to establish that defendants' statements were threats under the proposed standard.... Under any standard, objective or subjective, ... the defendants' statements were true threats." *Cain, supra,* 418 F.Supp.2d at 479–80. Thus, I do not view either *D'Amario* or *Cain* as persuasive authority for adhering to an objective standard.

Although I disagree with the majority's conclusion that, notwithstanding *Black,* speech may be punished without a showing that the speaker subjectively intended to make a threat, I do not believe it is necessary to decide the issue in this case. I am persuaded that the evidence here was sufficient to establish that defendant subjectively intended to threaten the judges, and that his conviction was therefore not unconstitutional.

The jury found beyond a reasonable doubt that defendant acted with the intent to alter or affect the judges' decisions, and its finding was supported by defendant's trial testimony conceding that he sent the notices to the judges with the intent to influence them to "change their mind." This finding alone potentially satisfies the subjective intent requirement of *Black.* After explaining that requirement, the *Black* Court went on to conclude that "Virginia's statute does not run afoul of the First Amendment insofar as it bans cross burning with intent to intimidate," and that "[a] ban on cross burning carried out with the intent to intimidate is ... proscribable under the First Amendment." *Black, supra,* 538 U.S. at 363, 123 S.Ct. at 1549–50.

That a finding of specific intent may obviate First Amendment concerns about "true threats" was recognized in *United States v. Stewart,* 420 F.3d 1007 (9th Cir.2005). After discussing the "tension" between *Black* and its earlier holdings applying an objective

"true threat" definition, the *Stewart* court concluded that it need not decide whether the objective or subjective definition should apply because the evidence established that the defendant's statement was a true threat under either definition. In so concluding, the court observed that the statute under which the defendant was convicted contained a specific intent element: it punished only threats against officials made "with the intent to impede, intimidate, interfere with, or retaliate against such officials" on account of their performance of their duties. Thus, the court reasoned,

> [A] conviction under that statute could only be had upon proof that the speaker intended the speech to impede, intimidate, interfere with, or retaliate against the protected official. Such proof would seem to subsume the subjective "true threat" definition announced in *Black* ...; one cannot have the intent required under [the statute] without also intending to make the threat.

*Stewart, supra,* 420 F.3d at 1017. Similarly here, it is at least arguable that the specific intent requirement of § 18–8–306 subsumes the subjective "true threat" intent addressed in *Black.*

However, even if it does not, there was ample additional evidence presented at trial that defendant subjectively intended his notices to the judges to be threats. As the majority points out, the notices expressly threatened the judges with arrest by a militia; they referenced a charge of treason, an offense punishable by death; and they were conveyed directly to the judges, as opposed to being mere "political hyperbole" intended for public consumption. Additionally, defendant testified that he wanted to convey to the judges that, if they did not return his gun and bullets and overturn his conviction, they would be arrested.

He also testified regarding a "preliminary militia alert" that he had sent out to members of his militia. The alert, which was admitted into evidence, is replete with references to the weapons defendant and the militia would use if defendant were to find himself in a standoff with the government ("As long as I am alive and have ammo, and yes I have lots of ammo, I will hold them at bay.... Once you take up with force of arms and deploy as an individual or a unit, you are in the game.... I will be well armed. ... I hope all of you will come prepared with force of arms...."). Although the "preliminary militia alert" was sent out before defendant sent his notices to the judges and would not itself rise to the level of a true threat, it was relevant to the determination of defendant's subjective intent in sending out the notices.

The evidence thus establishes that, even assuming subjective intent is required, defendant's notices were "true threats," and, as such, were not protected by the First Amendment. In light of the evidence, I further conclude that the deficiencies in the jury instructions of which defendant complains did not rise to the level of plain error. For these reasons, and because I concur in the majority's resolution of defendant's additional contentions, I agree that the judgment of conviction should be affirmed.