BAXTER, J., Concurring.
The First Amendment allows states “to ban a ‘true threat.’ ” (Virginia v. Black (2003) 538 U.S. 343, 359 [155 L.Ed.2d 535, 123 S.Ct. 1536] (Black).) The majority opinion, which I have joined, is consistent with the First Amendment. It upholds the constitutionality of Penal Code section 140, subdivision (a), on the ground that the statute applies “only to those threatening statements that a reasonable listener would understand, in light of the context and surrounding circumstances, to constitute a true threat, namely, ‘a serious expression of an intent to commit an act of unlawful violence.’ ” (Maj. opn., ante, at p. 427, quoting Black, supra, 538 U.S. at p. 359.) I write separately to discuss more fully the Ninth Circuit’s mistaken belief that a “true threat” requires something else, namely, proof that the speaker subjectively intended the statements be taken as a threat. (See U.S. v. Bagdasarian (9th Cir. 2011) 652 F.3d 1113, 1116-1118; U.S. v. Cassel (9th Cir. 2005) 408 F.3d 622, 631-633.)
*429 As this court’s opinion points out, decisions prior to Black “ ‘almost uniformly’ ” applied an objective standard, not a subjective standard, to determine whether a statement was a true threat and thus outside of the protections afforded by the First Amendment. (Maj. opn., ante, at p. 424; see also Doe v. Pulaski County Special School Dist. (8th Cir. 2002) 306 F.3d 616, 622 (en banc) [“All the courts to have reached the issue have consistently adopted an objective test that focuses on whether a reasonable person would interpret the purported threat as a serious expression of an intent to cause a present or future harm.”].) To construe Black as upsetting the legal landscape would be a peculiar reading. Black did not criticize the existing case law. Indeed, it did not even purport to announce what criminal intent was constitutionally required. (Strasser, Advocacy, True Threats, and the First Amendment (2011) 38 Hastings Const. L.Q. 339, 377.) Rather, Black involved a criminal statute that expressly included a showing of subjective intent—i.e., a Virginia statute banning cross burning with “ ‘an intent to intimidate a person or group of persons.’ ” (Black, supra, 538 U.S. at p. 347, quoting Va. Code Ann. § 18.2-423.) The constitutional necessity of such a provision was never at issue.
Rather, the controversy in Black centered on an additional provision of the Virginia criminal statute under which “ ‘any . . . burning of a cross shall be prima facie evidence of an intent to intimidate a person or group of persons.’ ” (Black, supra, 538 U.S. at p. 363 (plur. opn. of O’Connor, J.) [quoting Va. Code Ann. § 18.2-423].) Because of the prima face provision, the jury was instructed that “ ‘[t]he burning of a cross, by itself, is sufficient evidence from which you may infer the required intent.’ ” (Id. at p. 364 (plur. opn. of O’Connor, J.).) A historical survey of cross burning, however, called into question the validity of the prima facie provision and the corresponding instruction. Having originated as a means for Scottish tribes to signal each other, cross burning in the United States had become “inextricably intertwined with the history of the Ku Klux Klan” as “a ‘symbol of hate.’ ” (Id. at pp. 352, 357.) Even so, a burning cross can convey both a political message or a threatening one. (Id. at p. 357.) A burning cross may stand at times as a “symbol[] of shared group identity and ideology” at Ku Klux Klan gatherings (or in movies depicting the Klan), or it may blaze as “a tool of intimidation and a threat of impending violence.” (Id. at pp. 356, 354.) Because of this dual history, “a burning cross does not inevitably convey a message of intimidation” (id. at p. 357)—or, in other words, a burning cross is not inevitably a true threat. Something more would be required to make it a true threat.
One “type of true threat,” according to the high court, occurs “where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death.” (Black, supra, 538 U.S. at *430 p. 360.) Although “some cross burnings fit within this meaning of intimidating speech, and rightly so” (ibid..), “[t]he prima facie evidence provision in [Black] ignores all of the contextual factors that are necessary to decide whether a particular cross burning is intended to intimidate” (id. at p. 367 (plur. opn. of O’Connor, J.)). The plurality then concluded: “The First Amendment does not permit such a shortcut.” (Ibid. (plur. opn. of O’Connor, J.); see also id. at p. 380 (cone. & dis. opn. of Scalia, J.) [the jury instruction made it “impossible to determine” whether the verdict rested on the entirety of the evidence, “including evidence that might rebut the presumption that cross burning was done with an intent to intimidate,” or whether the jury instead “focused exclusively on the fact that the defendant burned a cross”].) Indeed, “the prima facie provision strips away the very reason why a State may ban cross burning with the intent to intimidate. . . . The provision permits the Commonwealth to arrest, prosecute, and convict a person based solely on the fact of the cross burning itself’—even when the conduct is “core political speech” and, hence, not a true threat. (Id. at p. 365 (plur. opn. of O’Connor, J.).)
Penal Code section 140, subdivision (a), by contrast, applies only to true threats, not to speech protected by the First Amendment. As our opinion today explains, section 140, subdivision (a), applies “only to those threatening statements that a reasonable listener would understand, in light of the context and surrounding circumstances, to constitute a true threat, namely, ‘a serious expression of an intent to commit an act of unlawful violence.’ ” (Maj. opn., ante, at p. 427, quoting Black, supra, 538 U.S. at p. 359.) Under these circumstances, there need not be any additional showing that the speaker subjectively intended the statements be taken as a threat. The need to punish true threats—i.e., to “ ‘protect[] individuals from the fear of violence’ and ‘from the disruption that fear engenders’ ” (Black, supra, 538 U.S. at p. 360)—is triggered when a reasonable listener would understand the statements, in context, to be a serious expression of an intent to commit an act of unlawful violence. The fear of violence and the accompanying disruption such fear may cause is in no way diminished by the possibility that the speaker subjectively (and silently) did not intend to make a threat. And Black did not hold otherwise.
Our ruling today is consistent with the understanding of most courts that have considered the issue since Black was decided. (City of San Jose v. Garbett (2010) 190 Cal.App.4th 526, 539 [118 Cal.Rptr.3d 420] [Black does not require the defendant have “an intent that a statement ‘be received as a threat’ ”]; U.S. v. Armel (4th Cir. 2009) 585 F.3d 182, 185 [“Statements constitute a ‘true threat’ if ‘an ordinary reasonable recipient who is familiar with the[ir] context . . . would interpret [those statements] as a threat of injury.’ ”]; U.S. v. Jongewaard (8th Cir. 2009) 567 F.3d 336, 339, fn. 2 [“In this circuit, the test for distinguishing a true threat from constitutionally *431 protected speech is whether an objectively reasonable recipient would interpret the purported threat ‘as a serious expression of an intent to harm or cause injury to another.’ ”]; Porter v. Ascension Parish School Bd. (5th Cir. 2004) 393 F.3d 608, 616 [“Speech is a ‘true threat’ and therefore unprotected if an objectively reasonable person would interpret the speech as a ‘serious expression of an intent to cause a present or future harm.’ The protected status of the threatening speech is not determined by whether the speaker had the subjective intent to carry out the threat; rather, to lose the protection of the First Amendment and be lawfully punished, the threat must be intentionally or knowingly communicated to either the object of the threat or a third person.” (fns. omitted)]; U.S. v. Zavrel (3d Cir. 2004) 384 F.3d 130, 136; U.S. v. Nishnianidze (1st Cir. 2003) 342 F.3d 6, 14-15 [“A true threat is one that a reasonable recipient familiar with the context of the communication would find threatening”; thus the government had to prove only “that the defendant intended to transmit the interstate communication and that the communication contained a true threat”]; U.S. v. Syring (D.D.C. 2007) 522 F.Supp.2d 125, 129 [“courts in all jurisdictions consider whether a reasonable person would consider the statement a serious expression of an intent to inflict harm . . .”]; New York ex rel. Spitzer v. Cain (S.D.N.Y. 2006) 418 F.Supp.2d 457, 479 [“The relevant intent is the intent to communicate a threat, not as defense counsel maintains, the intent to threaten.”]; Citizen Publishing Co. v. Miller (2005) 210 Ariz. 513 [115 P.3d 107, 114] [under Arizona’s test, which is “substantially similar” to Black, “ ‘true threats’ are those statements made ‘in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily harm upon or to take the life of [a person]’ ”]; People v. Stanley (Colo.App. 2007) 170 P.3d 782, 789 [“Black does not hold that subjective intent to threaten must be proved.”]; State v. DeLoreto (2003) 265 Conn. 145 [827 A.2d 671, 680] [“In the context of a threat of physical violence, ‘whether a particular statement may properly be considered to be a threat is governed by an objective standard—whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault.’ ”]; Hearn v. State (Miss. 2008) 3 So.3d 722, 739, fn. 22 [“The protected status of threatening speech is not based upon the subjective intent of the speaker.”]; State v. Johnston (2006) 156 Wn.2d 355 [127 P.3d 707, 710] [“ ‘[W]hether a true threat has been made is determined under an objective standard that focuses on the speaker.’ ”]; see generally Citron, Cyber Civil Rights (2009) 89 B.U. L.Rev. 61, 107, fn. 321 [“Only the Ninth Circuit requires proof that the defendant subjectively intended to threaten the victim.”].)
*432 Thus, when the high court said, “ ‘True threats’ encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals” (Black, supra, 538 U.S. at p. 359), it did not thereby, for the first time, require proof that the speaker subjectively intended the speech be taken as a threat. The relevant intent remains the intent to communicate, not the intent to threaten. (Porter v. Ascension Parish School Bd., supra, 393 F.3d at pp. 616-617.) A reading of Black that recasts “ ‘means to communicate’ ” into a requirement that the speaker “intended] for his language to threaten the victim” (U.S. v. Cassel, supra, 408 F.3d at p. 631) assumes that the single word “communicate” was designed to overrule the settled law discussed above, and assigns “communicate” much more work than the word ordinarily can bear. Moreover, the high court, in the same paragraph in Black, went on to say that the “prohibition on true threats ‘protects individuals from the fear of violence’ and ‘from the disruption that fear engenders,’ in addition to protecting people ‘from the possibility that the threatened violence will occur.’ ” (Black, supra, 538 U.S. at p. 360.) The need for such protection, as noted above, does not depend on whether the speaker subjectively intended to threaten the victim. “A standard for threats that focused on the speaker’s subjective intent to the exclusion of the effect of the statement on the listener would be dangerously underinclusive with respect to the first two rationales for the exemption of threats from protected speech.” (New York ex rel. Spitzer v. Cain, supra, 418 F.Supp.2d at p. 479.)
One might also question the logic of resting the constitutional determination whether speech qualifies as a true threat on the subjective understanding of the speaker, without regard to whether the speech objectively would be viewed as threatening. (See U.S. v. Bagdasarian, supra, 652 F.3d at p. 1117 & fn. 14.) A statement that is subjectively intended to be a threat but which presents no objective indicators of its threatening nature would not trigger fear in the recipient or cause disruption. Indeed, such speech is unlikely ever to come to the attention of law enforcement. (See People v. Parson (2008) 44 Cal.4th 332, 346 [79 Cal.Rptr.3d 269, 187 P.3d 1] [“ ‘ “ ‘intent may be inferred from words, acts, and other objective facts’ ” ’ ”].)
In short, the subjective standard created by the Ninth Circuit is both mistaken, in that it purports to define what is a true threat for federal constitutional purposes, and dangerous, in that it compromises the government’s ability to protect individuals from the fear of violence and the *433 disruption that fear engenders. California has good reason for adopting the objective standard, the standard already used in many other jurisdictions. I therefore join the opinion of the court authored by Justice Kennard.
Cantil-Sakauye, C. J., Werdegar, J., Chin, J., and Corrigan, J., concurred.