23CA0585 Peo v Dexter 07-03-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA0585
Garfield County District Court No. 22CR99
Honorable John F. Neiley, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jordan Akia Dexter,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE KUHN
Moultrie and Berger*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 3, 2025

Philip J. Weiser, Attorney General, Trina K. Kissel, Senior Assistant Attorney General and Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

James West, Alternate Defense Counsel, Longmont, Colorado, for Defendant-Appellant

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     Defendant, Jordan Akia Dexter, appeals the judgment of conviction after a jury found him guilty of two counts of attempt to influence a public servant and one count of harassment by telephone. We affirm.

## I.     Background

¶ 2     In January 2021, Detective Jeffrey Fain of the Glenwood Springs Police Department obtained and executed a search warrant for Dexter's home based on information that Dexter was in possession of a firearm in violation of a civil protection order. Officers seized an AR-15 and ammunition from Dexter's bedroom while executing the warrant. Later that day, Dexter was arrested and charged with a protection order violation for possessing the firearm.

¶ 3     On February 14, 2022, the prosecution dismissed the criminal case against Dexter because there was a clerical error in the protection order, and it did not restrict Dexter from possessing firearms. After the case was dismissed, the protection order was modified to prohibit Dexter from possessing firearms.

¶ 4     Between February 15 and March 11, Dexter repeatedly called the Glenwood Springs Police Department and various law

enforcement dispatch centers to get the firearm, that he said belonged to his friend, returned. Based on these calls, the prosecution charged Dexter with three counts of attempt to influence a public servant, six counts of harassment, and one count of telephone harassment. *See* § 18-8-306, C.R.S. 2024 (attempt to influence a public servant); § 18-9-111(1)(e), C.R.S. 2024 (harassment); § 18-9-111(1)(f), C.R.S. 2024 (telephone harassment).

¶ 5    After a jury trial, Dexter was convicted of two of the attempt to influence a public servant counts — one for the call he made to a Garfield County dispatch operator and one for the call he made to a Mesa County dispatch supervisor. He was also convicted of telephone harassment for the calls he made to the Garfield County nonemergency line. The jury acquitted Dexter of the remaining counts, all of which involved Detective Fain. The trial court imposed a three-year probationary sentence for the attempt to influence a public servant counts and a concurrent one-year probationary sentence for the telephone harassment conviction.

## II.    Analysis

¶ 6    Dexter contends that his convictions for attempt to influence a public servant must be reversed because (1) he was convicted of

2

speech that did not rise to the level of "true threats" under the United States and Colorado Constitutions and (2) the attempt to influence a public servant statute, section 18-8-306, is unconstitutionally vague and overbroad as applied to him. Dexter further contends that the evidence presented at trial was insufficient to sustain his conviction for harassment by telephone. We reject each of these contentions and affirm the judgment.

## A.    True Threats

¶ 7    Dexter contends that his speech did not rise to the level of "true threats" and is therefore constitutionally protected.

### 1.    Applicable Law and Standard of Review

¶ 8    The First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. But the protections afforded by the First Amendment are not absolute; there are categories of speech the government may permissibly regulate. *People v. Stanley*, 170 P.3d 782, 786 (Colo. App. 2007) (citing *Virginia v. Black*, 538 U.S. 343, 358 (2003)). One such category is "true threats." *Id.* "True threats of violence, everyone agrees, lie outside the bounds of the First Amendment's protection."

*Counterman v. Colorado*, 600 U.S. 66, 72 (2023).  Accordingly, any

statute that criminalizes threats must be applied and interpreted

consistently with the First Amendment.  *Stanley*, 170 P.3d at 786;

*see also Watts v. United States*, 394 U.S. 705, 707 (1969); *People v.*

*Hickman*, 988 P.2d 628, 639-41 (Colo. 1999).

¶ 9        Section 18-8-306 provides:

> Any person who attempts to influence any
> public servant by means of deceit or by threat
> of violence or economic reprisal against any
> person or property, with the intent thereby to
> alter or affect the public servant's decision,
> vote, opinion, or action concerning any matter
> which is to be considered or performed by the
> public servant or the agency or body of which
> the public servant is a member, commits a
> class 4 felony.

Because section 18-8-306 criminalizes threats, courts must

interpret it to limit criminal culpability to statements constituting

"true threats."  *Stanley*, 170 P.3d at 786.

¶ 10       "True threats are 'serious expressions' conveying that a

speaker means to 'commit an act of unlawful violence.'"

*Counterman*, 600 U.S. at 74 (quoting *Black*, 538 U.S. at 359).  As

the Supreme Court explained in *Counterman*, "The 'true' in that

term distinguishes what is at issue from jests, 'hyperbole,' or other

statements that when taken in context do not convey a real possibility that violence will follow (say, 'I am going to kill you for showing up late')." *Id.* (quoting *Watts*, 394 U.S. at 708).

¶ 11        Generally, the existence of a true threat depends on what the statement conveys to the person on the other end, and not on whether the speaker was aware of, or intended to convey, the threatening aspect of the message. *Id.*; *see also Black*, 538 U.S. at 359-60 ("The speaker need not actually intend to carry out the threat."). Additionally, the Court in *Counterman* held that in true-threat prosecutions, the First Amendment requires the prosecution to prove "that the defendant had some subjective understanding of the threatening nature of his statements," thereby abrogating Colorado's objective person test. *Counterman*, 600 U.S. at 69, 71-73. Specifically, the Court held that the prosecution must prove that the defendant, at a minimum, acted recklessly — that is, that he "consciously disregarded a substantial risk that his communications would be viewed as threatening violence." *Id.* at 69.

¶ 12        Whether a statement is a true threat is a question of fact to be determined by the fact finder. *People v. Chase*, 2013 COA 27, ¶ 70.

5

However, "where First Amendment concerns are implicated, the court has an obligation to make an independent review of the record to assure that the judgment does not impermissibly intrude on the field of free expression." *Id.* That review is "akin to de novo review." *Anderson v. Griswold,* 2023 CO 63, ¶ 227, *rev'd on other grounds by Trump v. Anderson,* 601 U.S. 100 (2024). Therefore, we "may give some 'presumption of correctness' to factual findings," and otherwise "examine for ourselves the statements in issue and the circumstances under which they were made to see . . . whether they are of a character which the principles of the First Amendment . . . protect." *Id.* (quoting *Bose Corp. v. Consumers Union of U.S., Inc.,* 466 U.S. 485, 500 (1984); ellipses in original).

¶ 13    Initially, we note that Dexter's trial occurred before *Counterman* was announced. In anticipation of the Court's ruling, however, Dexter was prosecuted in accordance with a subjective standard. The jury was instructed that a true threat required the prosecution to prove that Dexter *subjectively* intended to threaten a public servant during his calls. This standard was greater than the recklessness mental state that *Counterman* requires. *See Counterman,* 600 U.S. at 78-79 ("Purpose is the most culpable level

in the standard mental-state hierarchy, and the hardest to prove. A person acts purposefully when he 'consciously desires' a result — so here, when he wants his words to be received as threats."). Thus, giving "some presumption of correctness," *Anderson*, ¶ 227, to the jury's factual finding that Dexter subjectively intended to threaten the dispatch operators, we now examine for ourselves the statements at issue.

### 2. Garfield County Dispatch Operator (Count 2)

¶ 14    In the phone call to the Garfield County dispatch center, Dexter tells the dispatcher that the Glenwood Springs Police Department has stolen his property and she "better put somebody high up on the phone right now because they are going to release my property or I'm going to come physically take my property. And that's not a threat, that's a promise."

¶ 15    The dispatcher asks Dexter where his property was taken from before he interrupts her by telling her that the Glenwood Springs Police Department does not have "legal authority" to have his property "so you better put someone high up on Glenwood Springs Police Department's list on my phone right now or I will take my property by force, that's not a threat, it's a promise."

¶ 16    The dispatcher then tells Dexter that she will get an officer in touch with him and again asks for the address from where his property was taken.  After providing the address, Dexter explains that the judge and the district attorney are "shaking in their boots" because "the search warrant was filled out improperly," "so somebody better get me my property five freaking minutes ago."

¶ 17    Dexter tells the dispatcher that he has been on the phone with records at Glenwood Springs Police Department "so you better get a real officer on the phone to bring me my property or explain to me the legal authority he has to keep my property, or I'm going to come get that officer for my property today."  The dispatcher confirms that they will have an officer call Dexter, gets his name and phone number, and Dexter tells her, "you've got forty-five minutes or I'm going to come looking" before ending the call.

¶ 18    Dexter alleges that while he threatened and promised to go to the police station and remove his property by force, there was "no chance" that he was expressing a serious intent to do so, or that the dispatcher could reasonably interpret his words in that way. Rather, he contends, his words were firmly in the realm of "bluster and hyperbole."  We're not persuaded.

¶ 19    As previously discussed, Dexter did not need to intend to carry out the threats he made for his words to qualify as "true threats." *See Counterman,* 600 U.S. at 74; *see also Black,* 538 U.S. at 359-60.  Instead, the existence of a true threat depends on what the statement conveys to the person on the other end.  *Id.*  And here, the dispatcher testified that she did not know Dexter, she perceived that he was upset and frustrated, and she took his threats seriously.  After the call, she created a call narrative within the dispatch center's system, which would be routed to the Glenwood Springs Police Department.  In the narrative she noted that Dexter had his property taken by the Glenwood Springs Police Department, he had questions about the law, and "somebody had five minutes to call him back or he would come looking" and would physically take his property back.

¶ 20    Moreover, based on our independent review of the call, nothing in Dexter's tone or words suggested that his threat was either bluster or hyperbole.  The call was made the day after his protection order violation case was dismissed.  He was upset, his tone was forceful, and he repeatedly threatened to take his property back by physical force if the dispatcher did not connect him to someone

"high up" in the Glenwood Springs Police Department. *See Black*, 538 U.S. at 359 ("'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals."). Accordingly, we conclude that Dexter's statements to the Garfield County dispatch operator were true threats, unprotected by the First Amendment.

### 3. Mesa County Dispatch Supervisor (Count 3)

¶ 21 In the call to the Mesa County dispatch operator, Dexter explains that he is trying to make a report against the Glenwood Springs Police Department for "failure to do their duty." The dispatcher explains that Dexter has reached Mesa County dispatch, and they do not dispatch for the Glenwood Springs Police Department. Dexter responds that he has been trying for "three weeks" to get someone "higher up" at the Glenwood Springs Police Department to call him back and, this time, he called the U.S. Marshal but was rerouted to her.

¶ 22 When the dispatcher repeats that they do not dispatch for the Glenwood Springs Police Department, Dexter, increasingly frustrated, tells her that he has a report to make against the

10

department and he doesn't "give a flying fuck if anybody doesn't want to take it, somebody is going to take it."  When Dexter starts threatening to start "shooting up fucking tyrants," he is quickly transferred to a supervisor.

¶ 23    Once connected to the supervisor, Dexter immediately says,

> Alright so before you say you don't dispatch to
> Glenwood, I don't fucking care.  If you don't
> listen to what I have to say, this is the last call
> I'm going to make, or I'm going to start
> shooting up fucking tyrants.  And that's the
> last time I'm going to say it.

¶ 24    Dexter then explains how Detective Fain is violating his and his friend's civil rights, references that someone needs to talk to Detective Fain that day, or he will "and you don't want that." Dexter demands that the supervisor "put a cop on the phone." Then he says that if someone from the Glenwood Springs Police Department contacts him and threatens him, he "will absolutely end a tyrant's life . . . hands down, no questions asked, on a recorded line."

¶ 25    When the supervisor tells Dexter that "none of our agencies are able to help you," he tells her to dispatch him to the U.S. Marshal's service, "which absolutely fucking can."  She explains

11

they do not dispatch for the U.S. Marshal's service, only to the Collbran or De Beque Marshal. Dexter tells her to "have a Marshal call me." When the supervisor tells him she "won't be having a Marshal call" him but would "be happy to give [his] information to a Glenwood Springs Police Department officer," he asks for her name and operator number. He then tells her, "I'll have your address by the end of the day." She gives him her operator number, and they end the call.

¶ 26    Dexter asserts that his words "shoot a tyrant" were not threats to shoot officers, or Detective Fain, but rather, were generalized statements and "bluster in explicitly political language." But the record directly refutes this argument because Dexter tells the supervisor that he "doesn't need the Glenwood police department to contact me and threaten me some more. If they contact me and threaten me some more, I will absolutely end a tyrant's life." In this instance, Dexter directly refers to the Glenwood Springs Police Department officers as "tyrants."

¶ 27    Additionally, the supervisor testified that she did not know Dexter, he "seemed very serious" and "angry," and she "had no reason to believe" that this might not be a real threat of physical

12

violence.  Indeed, after concluding the call, she contacted the Garfield County dispatch center to notify them that someone "was making threats towards their department."

¶ 28    Moreover, in a separate call introduced at trial with Detective Fain, Dexter refers to the Glenwood Springs Police Department as "a bunch of tyrants."  *See Counterman*, 600 U.S. at 74 (considering the statement "when taken in context" to determine whether it conveys a real possibility that violence will follow); *see also People v. Janousek*, 871 P.2d 1189, 1198 (Colo. 1994) (Mullarkey, J., specially concurring) ("[T]he critical inquiry for First Amendment purposes is whether the statements, viewed in the context in which they were spoken or written, constitute a 'true threat.'").  Taken together and in context, Dexter's references to shooting a tyrant were directed at Detective Fain and the Glenwood Springs Police Department.

¶ 29    Nor are we persuaded by Dexter's argument that the reference to "tyrants" was only an expression of political thought and dissatisfaction with his treatment by the government — in other words that it was core political speech.  *See Meyer v. Grant*, 486 U.S. 414, 425 (1988) (noting that political speech protections are at

13

their "zenith" when core political speech is at issue). While the district court noted that Dexter's reference to "tyrants" mirrored Thomas Jefferson's "1787 letter to William Stephens Smith, John Adams' son-in-law, that 'The tree of liberty must be refreshed from time to time with the blood of patriots and tyrants,'" in context, it nevertheless contained a true threat. *See People in Interest of R.D.*, 2020 CO 44, ¶ 54 ("[A] veiled statement may carry a true threat."), *abrogated on other grounds by Counterman*, 600 U.S. at 82; *see also United States v. Jeffries*, 692 F.3d 473, 482 (6th Cir. 2012) ("But one cannot duck [a threats prosecution] merely by delivering the threat in verse or by dressing it up with political (and protected) attacks on the legal system."), *abrogated on other grounds by Elonis v. United States*, 575 U.S. 723 (2015).

¶ 30     Dexter also asserts that his statement to the supervisor, "I'll have your address by the end of the day," was not a true threat because it was not connected to any request and could not have been aimed at influencing anything. But the supervisor testified that she perceived his specific statements to her as "threatening" and she found "the reference to finding [her] home address" to be "troubling." *See Stanley*, 170 P.3d at 790 (one factor considered in

14

identifying a true threat is the subjective reaction of the recipient). Further, our independent review of the call confirms that Dexter's tone was forceful and aggressive, he was angry, and when the supervisor refused to have a U.S. Marshal call him, he threatened her by asking for her name and operator number and by informing her that he would have her address by the end of the day. These were not, as Dexter claims "colorful expression[s] of political thought and frustration." Rather, we conclude that Dexter's statements to the Mesa County dispatch supervisor were true threats, unprotected by the First Amendment.

B. As-Applied Constitutional Challenges to Section 18-8-306

¶ 31 Having concluded that Dexter's statements were "true threats" we turn next to his contention that section 18-8-306 is unconstitutionally vague and overbroad as applied to him.

1. Dexter Did Not Preserve His Vagueness Challenge

¶ 32 As an initial matter, we note that the parties disagree as to whether Dexter preserved his argument that section 18-8-306 is unconstitutionally vague as applied to him. Before trial, Dexter moved to dismiss all of the counts against him as "unconstitutionally vague and overbroad as applied, because the

15

alleged misconduct does not constitute true threats." At a hearing on the motion, the parties discussed only whether the statements the prosecution intended to elicit at trial were "true threats" and how a jury instruction should be crafted so that the jury could make this determination. The court then took testimony from Detective Fain. Following the hearing, the district court issued a written order denying Dexter's motion but noting that he could re-raise it at the close of the prosecution's case. In the written order, the district court addressed Dexter's argument that the statute was "unconstitutional on vagueness grounds because [it] implicate[s] a question of what constitutes a true threat." However, because the court perceived the objection as a "facial challenge," it rejected it citing to *Janousek*, where the supreme court concluded that section 18-8-306 was not vague or ambiguous on its face. *See Janousek*, 871 P.2d at 1197.

¶ 33    At trial, after the conclusion of the prosecution's case, defense counsel made a motion for judgment of acquittal and argued, as relevant here, that the statements Dexter made were not true threats. The court denied the motion, finding that "the evidence and testimony presented at this point in the case . . . is sufficient

16

for a reasonable juror to come to the conclusion that these [statements] constitute true threats that are not protected speech under either the United States or Colorado Constitution[s]."

¶ 34     On appeal, Dexter makes a different vagueness argument.  He does not argue that the statute is unconstitutionally vague on its face or as applied to him because it implicates a question of what constitutes a true threat.  Rather, Dexter argues that section 18-8-306 is unconstitutionally vague as applied to him because "[a] person of ordinary intelligence in [his] position could not have discerned that asking only for innocuous results from a public official — even if accompanied by a threat (which may constitute a different crime) — was committing a crime under this statute."  This argument was not preserved.  *See People v. Ujaama*, 2012 COA 36, ¶ 37 ("An issue is unpreserved for review when, among other things . . . an objection or request was made in the trial court, but on grounds different from those raised on appeal . . . .").

¶ 35     Nor are we persuaded that the argument was preserved because defense counsel argued during his motion for a judgment of acquittal that the requests Dexter made of the various law enforcement agencies were not "of the sort contemplated by the

statute" because they were "perfectly reasonable requests." Here, counsel was arguing sufficiency of the evidence, not statutory vagueness. Indeed, the district court ruled on this argument based on sufficiency of the evidence, not vagueness. *See id.*; *see also Martinez v. People*, 2015 CO 16, ¶ 14 ("Parties must make objections that are specific enough to draw the trial court's attention to the asserted error.").

¶ 36    Because we conclude that Dexter's vagueness challenge to section 18-8-306 was not preserved, we will not address it. *See People v. Stone*, 2020 COA 23, ¶ 49 (declining to address "a different as-applied claim on appeal" that was not presented to the district court); *see also People v. Veren*, 140 P.3d 131, 140 (Colo. App. 2005) ("To support [an as-applied statutory challenge], it is imperative that the trial court make some factual record that indicates what causes the statute to be unconstitutional as applied.").

2.    Section 18-8-306 Is Not Overbroad As Applied

¶ 37    Next, we address Dexter's claim that section 18-8-306 is unconstitutionally overbroad as applied to him because it "reaches all possible statements or actions which may influence and alter the

course of a public official's action or decisions." Dexter contends that the statute "sweeps in far more speech than can or should be prohibited, therefore, infringing on the exercise of a fundamental or express constitutional right."

¶ 38 We review the constitutionality of a statute as applied de novo. *Chase*, ¶ 65. A statute is presumed to be constitutional, and the party challenging its validity has the burden of proving unconstitutionality beyond a reasonable doubt. *Janousek*, 871 P.2d at 1195.

¶ 39 The critical elements of section 18-8-306 are "(1) an attempt to influence a public servant (2) by means of deceit or by threat of violence or economic reprisal (3) with the intent to alter or affect the public servant's decision or action." *Janousek*, 871 P.2d at 1194. "The purpose of the statute is to protect public servants from undue influence or intimidation by means of deceit or by threat of violence or economic reprisal." *Id.*

¶ 40 The tone and language Dexter used on the calls with the two dispatchers was threatening. He threatened violence if they did not comply with his requests to transfer him to someone "high up" in the Glenwood Springs Police Department. He threatened violence if

19

they didn't "listen to what [he] ha[d]to say" and connect him to a U.S. Marshal. And the dispatchers testified that they took what he had to say seriously. The language Dexter used went beyond mere "innocuous requests" and, as we have already discussed, does not lie within the area of protected speech.

¶ 41 Dexter has no constitutionally protected right to make threats of violence to a public servant. *See id.* at 1193. And he points to no language he used that should not be covered by the statute. Because the language Dexter used fits squarely within the statute's proscriptions — and constitutes true threats not protected by the First Amendment — Dexter has failed to carry his burden of showing that the statute is unconstitutional as applied to him. *See id.* at 1195.

### C. Sufficiency of the Evidence (Count 9)

¶ 42 Dexter contends that the prosecution did not present sufficient evidence to prove beyond a reasonable doubt that he was guilty of harassment by telephone. We again disagree.

#### 1. Standard of Review and Applicable Law

¶ 43 Irrespective of preservation, we review the record de novo to determine whether the trial evidence was sufficient to sustain the

jury's verdict. *McCoy v. People*, 2019 CO 44, ¶ 27; *Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005). In completing this task, we must determine whether the evidence, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a rational fact finder that the defendant is guilty beyond a reasonable doubt. *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010). We give the prosecution the benefit of every reasonable inference that can fairly be drawn from the evidence, so long as any inference is supported by a convincing logical connection between the facts established and the conclusion inferred. *People v. Perez*, 2016 CO 12, ¶ 25; *People v. Villalobos*, 159 P.3d 624, 627 (Colo. App. 2006) ("[W]here reasonable minds could differ, the evidence is sufficient to sustain a conviction.").

2. Sufficient Evidence Supported the Jury's Verdict that Dexter Was Guilty of Harassment by Telephone (Count 9)

¶ 44 A person commits the crime of harassment by telephone "if, with the intent to harass, annoy or alarm another person, he or she . . . makes a telephone call or causes a telephone to ring repeatedly, whether or not a conversation ensues, with no purpose of legitimate conversation." § 18-9-111(1)(f), C.R.S. 2024.

¶ 45    Dexter contends that there is insufficient evidence to prove harassment by telephone because he had a legitimate purpose for calling — to be connected to the Glenwood Springs Police Internal Affairs — and he called repeatedly to show the dispatcher that his calls to the department were being rerouted to her.  We aren't persuaded.

¶ 46    The prosecution presented evidence that Dexter called a nonemergency line requesting to speak to Internal Affairs to report the Glenwood Springs Police Department for misconduct, dereliction of duty, threatening a citizen, and violating his civil rights, among other things.  The dispatcher told him that she could not transfer him to Internal Affairs, but that he could call the police department directly in ten minutes, at 8:00 a.m., and ask to be connected to them.  She acknowledged that calls before then would be rerouted back to her agency.  Frustrated with her answer, Dexter told her he was going to put her on YouTube, repeatedly requested to be put in touch with Internal Affairs, and told her, "We can wait the ten minutes."  When Dexter was disconnected, he called back, tying up three separate nonemergency lines, chanting "you are

22

going to do your job" repeatedly until he was disconnected a second time.

¶ 47     The dispatcher testified at trial that the three lines Dexter tied up totaled thirty percent of the total emergency and nonemergency lines her dispatch center operated. She explained that tying up those lines could prevent a real emergency call from getting through and agreed that Dexter's actions "were a serious impediment to dispatch's ability to function" because outside the police department's hours, emergency calls "frequently" come in on nonemergency lines.

¶ 48     Based on this evidence, a reasonable juror could conclude that, even if Dexter's initial call was for the legitimate purpose of being connected to Internal Affairs, his subsequent calls were not. The recorded calls, along with the dispatcher's testimony, when viewed in the light most favorable to the prosecution, were sufficient to prove that Dexter made the three simultaneous calls with no purpose of legitimate conversation and with the intent to harass, annoy, or alarm a person. Accordingly, we conclude that the evidence was sufficient to sustain the conviction of harassment by telephone.

### III. Disposition

¶ 49 The judgment is affirmed.

JUDGE MOULTRIE and JUDGE BERGER concur.